UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| INDIAN LAND CAPITAL COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>INFRASTRUCTURE DEVELOPMENT COOPERATIVE, LCA; HIGHLAND PARK MANAGEMENT, LLC; L. STEVEN HAYNES; and RAYCEN RAINES,<br><br>Defendant. | CIV. 5:21-cv-5015<br><br><br>**COMPLAINT** |

Plaintiff Indian Land Capital Company, LLC ("ILCC"), for its Complaint against the above named defendants, alleges as follows:

**PARTIES AND JURISDICTION**

1. ILCC is a Minnesota limited liability company, the sole member of which is the Indian Land Tenure Foundation, a Minnesota Non-profit corporation.

2. The Indian Land Tenure Foundation's principal place of business is in St. Paul, Minnesota.

3. The Indian Land Tenure Foundation is a citizen of Minnesota, and therefore ILCC is a citizen of Minnesota.

4. Defendant Infrastructure Development Cooperative, LCA ("IDC") is a District of Columbia limited cooperative.

5. At the time of the filing of this action, the sole member of IDC is Wakpamni Lake Community Corporation ("WLCC"), which is a corporate body that claims to be a fully owned corporate entity of the Wakpamni Lake Community of the Oglala Sioux Tribe.

6. The principal place of business of WLCC is located within the external boundaries of South Dakota.

7. WLCC, the sole member of IDC, is a citizen of South Dakota, and therefore IDC is a citizen of South Dakota.

8. Defendant L. Steven Haynes is a domiciliary of Dallas, Texas, and therefore is a citizen of Texas.

9. Defendant Highland Park Management, LLC ("Highland Park"), is a Delaware limited liability company based in Dallas, Texas.

10. Upon information and belief, Defendant Haynes is the sole member of Highland Park.

11. Because Haynes is a citizen of Texas, Highland Park Management is also a citizen of Texas.

12. Defendant Raycen Raines is a domiciliary of South Dakota and therefore is a citizen of South Dakota.

13. The amount in controversy in this action exceeds $75,000.

14. Jurisdiction is appropriate under 28 U.S.C. § 1331.

15. Jurisdiction is appropriate under 28 U.S.C. § 1332.

16. Jurisdiction is appropriate under 28 U.S.C. § 1367.

17. A substantial part of the events or omissions giving rise to this action took place in the State of South Dakota or were directed at the State of South Dakota.

18. Additionally, all defendants are subject to personal jurisdiction in South Dakota due to their citizenship status or contractual relationships and obligations which were agreed to take place in South Dakota pursuant to agreement with South Dakota citizens.

19.     Venue is appropriate in the United States District Court for the District of South Dakota.

## BACKGROUND

A.   IDC'S FORMATION AND PURPOSE

20.     IDC was formed in 2015 by WLCC and the Enterprise Rancheria of Maidu Indians of California ("the Enterprise Rancheria").

21.     The Enterprise Rancheria is a federally recognized Indian Tribal Entity located within the boundaries of California.

22.     IDC was ostensibly formed to assist federally recognized tribes with economic development in Indian Country.

23.     Upon information and belief, Highland Park entered into an agreement with IDC through which Highland Park provided management and consulting services for IDC.

24.     Upon information and belief, at times relevant to this action, Highland Park acted as manager and agent of IDC.

25.     In turn, Highland Park acted primarily through Haynes.

26.     In 2015, Haynes, on behalf of Highland Park and IDC, began promoting a project through which IDC supposedly would provide propane to tribal entities ("the Project").

27.     Haynes represented the Project as a way in which tribal entities could improve access to propane, reduce energy costs for their citizens, and generate revenue for the member tribes.

28.     According to Haynes, IDC planned to purchase propane equipment and storage infrastructure, which then could be used to stabilize propane supply and prices in Indian Country.

29. Haynes proposed funding the Project principally from a bond to be issued under an agreement with the Public Finance Authority, a unit of government of the State of Wisconsin based in Madison, Wisconsin, which "rents out" its access to the tax-exempt bond market for a fee.

B.   NEGOTIATIONS FOR BRIDGE FINANCING

30. In late 2015 and early 2016 Haynes contacted ILCC to obtain "bridge financing" ostensibly to begin funding the Project while the bonding for the Project was being finalized.

31. During negotiations for the bridge financing, Haynes represented to ILCC that IDC was in the process of having a $22 million bond issued to fund the Project ("Bond Issuance").

32. Haynes further represented that a portion of the proceeds from the Bond Issuance, once obtained, would be used to immediately repay the proposed bridge financing in full.

33. During negotiations for the bridge financing, Haynes represented to ILCC that Oppenheimer Funds had already pledged to buy the Bond Issuance once the bonds were rated by Moody's Investor Service.

34. Haynes represented that the entire Bond Issuance was already subscribed, subject only to the publication of the rating.

35. During negotiations for the bridge financing, Haynes represented to ILCC that the rating from Moody's would be issued imminently.

36. Upon information and belief, neither the Oppenheimer Funds nor any other buyer had pledged to purchase the Bond Issuance, and the marketability of the bonds was doubtful.

37. Upon information and belief, at the time he made the representations about the pledged buyer of the bond, Haynes was aware, or reasonably should have been aware, that there

in fact was no buyer who had pledged or committed to buying the bonds and that the bonds were of doubtful marketability.

38. Haynes also made representations during loan negotiations indicating that there were ten tribal entity members of IDC, which would provide the initial customer base and market for its propane and related services.

39. Specifically, Haynes stated that the member tribal entities were located in South Dakota and North Dakota, including the Oglala Sioux Tribe, the Lower Brule Sioux Tribe, and the Rosebud Sioux Tribe.

40. Haynes represented to ILCC that IDC's business activities would be conducted in South Dakota and North Dakota during the term of the bridge loan.

41. Haynes represented that the Lower Brule Sioux Tribe had large storage tanks that were available to IDC and could be converted to propane use for purposes of the Project.

42. None of the above-mentioned tribal entities, however, were in fact members of IDC.

43. Haynes made the similar representations to various other entities in the course of preparing for the issuance of bonds and marketing the bonds.

44. To those entities, Haynes represented that the following tribal entities were members of IDC:

- Crow Creek Sioux
- Fort Belknap
- Lac du Flambeau
- Red Lake Band of Chippewa Indians of Minnesota
- Rosebud Sioux Tribe
- Saint Regis Mohawk Tribe
- Shawnee
- Sisseton-Wahpeton
- Spirit Lake Tribe
- St. Croix Chippewa Indians of Wisconsin

- Turtle Mountain
- Oglala Sioux Tribe

45. In fact, none of the alleged member tribal entities were members of IDC, and many had not even been contacted by IDC or its representatives.

46. Specifically, although WLCC claims to be a corporate body of the Wakpamni District of the Oglala Sioux Tribe, upon information and belief, it is not an official entity formed under the authority of the Oglala Sioux Tribe.

47. In fact, in June, 2014, the Oglala Sioux Tribe passed a resolution expressly stripping WLCC's president, Raycen Raines, of any claimed authority to take any economic development action on behalf of the Oglala Sioux Tribe.

48. Notwithstanding WLCC's lack of authority to act on behalf of the Oglala Sioux Tribe, Haynes, Raines, and IDC continued to misrepresent WLCC's membership in IDC as membership by the Oglala Sioux Tribe.

49. Specifically, Haynes and IDC represented that the claimed agreement with the Oglala Sioux Tribe granted IDC access to a market which consumed an estimated 2,213,602 gallons of propane annually.

50. Similarly, despite having no binding agreements with the other alleged member tribes, IDC represented to bonding agencies and potential purchasers that it had access to markets with demand for over 9,400,000 gallons of propane annually.

51. Haynes, Raines, and IDC utilized means of interstate communication, including the telephone, internet, and mail to make the above representations and to execute the contract documents.

C.     EXECUTION OF THE BRIDGE FINANCING

52.    On February 2, 2016, in reasonable reliance on the representations made by Haynes on behalf of Highland Park and IDC, ILCC entered into a Loan Agreement ("Loan Agreement") with IDC.  A copy of the Loan Agreement is attached as Exhibit 1 and is incorporated by reference as if fully set forth herein.

53.    Under the terms of the Loan Agreement, ILCC advanced loan proceeds in the principal amount of one million five hundred thousand dollars ($1,500,000.00) to IDC in exchange for IDC's promise to repay the loan proceeds plus interest.

54.    Under the terms of the Loan Agreement, IDC executed a Promissory Note dated February 2, 2016 ("the Note"), through which IDC promised to repay the loan proceeds plus interest at the rate of ten percent per annum (10%) on or before August 31, 2017, a total of One Million Seven Hundred Thirty-Six Thousand Two Hundred Fifty Dollars ($1,736,250.00).  A copy of the Note is attached as Exhibit 2 and is incorporated by reference as if fully set forth herein.

55.    Under the terms of the Note and the Loan Agreement, ILCC is entitled to recover the costs in enforcing the agreements or collecting the loan proceeds, including reasonable attorneys' fees.

56.    Under the terms of the Loan Agreement, the Loan Agreement is governed by Minnesota law.

57.    The Loan Agreement, Note, and other loan documents were executed by Art Angle, a member of the Enterprise Rancheria, as President of IDC.

58.    On May 11, 2016, Moody's took ratings action on the IDC bonds, assigning the bonds a "Caa2" rating, indicating the bonds were a high risk investment.

59. Despite the fact that Haynes had represented the Bond Issuance was fully subscribed, pending rating by Moody's, upon information and belief, no bonds were issued or purchased following the ratings action.

60. If any bonds were issued, IDC did not use the proceeds of those sales to pay down the debt to ILCC as represented during negotiation for the bridge loan.

D.   *ENTERPRISE RANCHERIA EXITS IDC*

61. After execution of the Loan Agreement, the Enterprise Rancheria became aware of a fraud investigation into a bond issuance involving Haynes, Raines, WLCC, and other third-parties who are not parties to this action.

62. Upon learning of such investigations, the Enterprise Rancheria, through its IDC board members, sought additional information from IDC, Highland Park, and Haynes, about the use of the loan proceeds, the status of the Project, and Haynes's, Raines's, and WLCC's involvement in the alleged bond fraud.

63. Upon information and belief, IDC, Haynes, and Highland Park failed and refused to provide adequate information in response to those lines of inquiry.

64. The Enterprise Rancheria conducted its own inquiries into other representations made by IDC and Haynes and discovered that other tribal entities IDC claimed to be members were not, in fact, members of IDC.

65. Further, the Enterprise Rancheria learned that Haynes and his associates had been spending money in IDC's accounts without the oversight or approval from IDC's board, which included two Enterprise Rancheria representatives, as required by IDC's corporate governance rules.

66. As a result of IDC's, Highland Park's, and Haynes's misrepresentations and failure to provide adequate information, on or around June 24, 2016, the Enterprise Rancheria terminated its membership in IDC.

67. The Enterprise Rancheria's withdrawal from IDC was not made public to prospective bond purchasers or to ILCC.

E.   DEFAULT ON THE NOTE AND EXTENSIONS

68. On August 31, 2017, IDC failed and refused to pay the amount due and owing under the Loan Agreement and Note.

69. Following IDC's failure to pay the amount due and owing, Haynes, on behalf of Highland Park and IDC, negotiated a Loan Maturity Date Extension Agreement ("Extension") with ILCC. A copy of the Extension is attached hereto as Exhibit 3 and is incorporated by reference as if fully set forth herein.

70. Raines participated in the Extension negotiations, during which he represented to ILCC that he was participating on behalf of the Oglala Sioux Tribe.

71. Upon information and belief, Raines had no authority to act on behalf of the Oglala Sioux Tribe, and his presence was intended to convince ILCC the Loan Proceeds were being used for their intended purposes.

72. Under the terms of the Extension, ILCC agreed to extend the maturity date of the Note to August 31, 2019, in exchange for additional interest, making the total amount due One Million Eight Hundred Thousand Dollars ($1,800,000).

73. Under the terms of the Extension, "[a]ll other terms and conditions of the transaction shall remain in effect from the original documents," and all terms not altered by the Extension "remain controlled by the original loan documents."

74. Thus, under the terms of the Loan Agreement and the Extension, IDC represented to ILCC that there had been no material change to the ownership of IDC, despite the fact that one of IDC's two member-owners had terminated its relationship with IDC and the other purported members had not joined IDC.

75. IDC failed and refused to pay the amount due and owing on August 31, 2019.

76. IDC and ILCC negotiated a second extension agreement, which was executed on September 30, 2019 ("Second Extension"). A copy of the Second Extension is attached hereto as Exhibit 4 and is incorporated by reference as if fully set forth herein.

77. Haynes again negotiated on behalf of IDC, with Raines participating ostensibly to represent the Oglala Sioux Tribe's interests.

78. Under the terms of the Second Extension, the maturity date of Promissory Note was extended to June 30, 2020, in exchange for two installment payments of $50,000.00.

79. Under the terms of the Second Extension, the parties agreed the total interest and principal due on June 30, 2020, would be $2,056,709.88.

80. IDC paid the first $50,000.00 installment for the Second Extension, but failed and refused to timely pay the second installment.

81. IDC failed and refused to pay the amount due on June 30, 2020.

82. Upon information and belief, IDC did not use the loan proceeds for their represented purpose.

83. Upon information and belief, IDC did not use the loan proceeds to purchase any equipment or otherwise pursue the Project's goals.

84. Upon information and belief, Haynes, under the guise of "consulting fees" and other expenses, misappropriated the loan proceeds for his and Raycen Raines' personal benefit, including payment for lavish trips and legal expenses related to other schemes.

85. Negotiations between the parties took place via telephone and email communication.

F. FRAUDULENT BOND SCHEME

86. Unknown to ILCC at the time it entered into the Loan Agreement, Haynes and Raines had previously participated in a fraudulent bond scheme involving WLCC.

87. Upon information and belief, in March 2014, Haynes and Raines became involved in a fraudulent bond issuance scheme.

88. Upon information and belief, Haynes and Raines, as representatives of WLCC, agreed to use WLCC's claimed status as a tribal entity to issue tax-free bonds.

89. Upon information and belief, working in concert with John "Yanni" Galanis and his associates, Haynes and Raines participated in a transaction in which WLCC would issue bonds.

90. Under the scheme, Galanis, through various entities controlled by him, represented to potential investors that a portion of the bond proceeds would be used to purchase an annuity, the proceeds of which would be sufficient to service the bond debt, and the remainder of the funds would be used for WLCC's economic development activities.

91. Ultimately, Galanis, through his controlled entities sold more than $40 million in bonds to various groups, through three separate bond issuances.

92. Galanis's controlled entities filtered the majority of the bond proceeds to Galanis's personal use and benefit.

93. Upon information and belief, however, $2,250,000.00 of the WLCC bond proceeds were deposited in a project fund ostensibly for the benefit of WLCC.

94. However, upon information and belief, WLCC did not use the project fund to fund legitimate economic development for the Wakpamni District or the Oglala Sioux Tribe.

95. Instead, upon information and belief, Haynes, working in conjunction with Raines, used Raines's association with WLCC to request disbursements of the project funds to Haynes for fake consultation services and other expenses supposedly related thereto.

96. Similarly, upon information and belief, substantial portions of the project funds were disbursed directly to Raines for his personal benefit.

97. Specifically, upon information and belief, the project fund was used to fund lavish travel for Haynes and Raines, including trips to Las Vegas.

98. Upon information and belief, during one such trip to Las Vegas believed to have been funded by the project fund, Haynes pitched his idea for IDC to representatives of the Enterprise Rancheria.

99. Upon information and belief, Haynes and Raines used the proceeds of the bridge loan in a similar manner, directing the funds to Haynes and Raines for inflated and fabricated consultation service fees, personal travel, and personal expenses.

### COUNT 1: BREACH OF CONTRACT / DEBT

100. ILCC incorporates by this reference all the allegations set forth in this complaint.

101. ILCC and IDC were parties to an enforceable Loan Agreement and a Promissory Note through which IDC promised to pay the principal sum of $1.5 million plus interest at the rate of 10% per annum.

102. IDC has failed and refused, and continues to fail and refuse to pay the amount due and owing under the Loan Agreement and Promissory Note.

103. IDC's failure to pay the amount due constitutes a breach of the agreement.

104. As a result of IDC's breach, ILCC has been injured in the amount of unpaid principal and interest under the Loan Agreement and the Note.

105. As of March 4, 2021, the amount due and owing is $1,500,000.00 in principal and $729,750.00 in interest, a sum total of $2,229,750.00.

## COUNT 2: CLAIM AND DELIVERY

106. ILCC incorporates by this reference all the allegations set forth in this complaint.

107. Under the terms of the Loan Agreement, IDC granted ILCC a security interest in certain assets belonging to IDC, including the following titled vehicles (together, "Vehicles"):

- a 2002 Freightliner FL70 Truck, VIN# 1FVABTAK62HJ81128
- a 1974 Dalworth Trailer, VIN# TP59686;
- a 1966 Lubbock Trailer, VIN# 56181;
- a 1957 Fruehauf Trailer, VIN# C38814;
- a 1957 Butler Trailer, VIN# 57033522K; and
- a 1956 Fruehauf Trailer, VIN# C37275.

108. ILCC's security interest attached to the Vehicles at the time the loan proceeds were advanced to IDC.

109. ILCC perfected its security interest in the Vehicles by denoting its lien on the Vehicles' electronic titles on the South Dakota Electronic Title Registry.

110. As a result of IDC's breach, ILCC is entitled to immediate possession of the Vehicles under the terms of the Loan agreement and the Uniform Commercial Code.

111. No other actions or proceedings at law or otherwise for recovery of the debt secured in the Loan Agreement, or any part thereof, have been had or commenced.

### COUNT 3: CONVERSION OF COLLATERAL (in the alternative)

112. ILCC incorporates by this reference all the allegations set forth in this complaint.

113. Due to IDC's breach of the Loan Agreement, ILCC has the right to immediate possession of the Vehicles.

114. Upon information and belief, IDC has, without permission or consent of ILCC, sold the Vehicles to a third-party or third-parties.

115. By selling the Vehicles, IDC has interfered with ILCC's possessory interest, which is superior to IDC's.

116. As a result of the conversion, ILCC has been injured in the amount of the fair market value of the collateral, which upon information and belief, is approximately $400,000.

### COUNT 4: FRAUD AND DECEIT (All Defendants)

117. ILCC incorporates by this reference all the allegations set forth in this complaint.

118. As described in more detail above, Haynes, Raines, Highland Park, and IDC made representations of fact, which Haynes, Raines, Highland Park, and IDC knew were false, or had reason to know were false, at the time they were made.

119. Defendants made said misrepresentations with the intent of inducing ILCC's reliance on the representations.

120. ILCC reasonably relied on the misrepresentations by entering into the Loan Agreement and the Amendments thereto.

121. ILCC has been injured by the misrepresentations in the amount of the loan proceeds advanced to IDC.

122. ILCC made the misrepresentations intentionally, knowingly, and maliciously, and therefore ILCC is entitled to punitive or exemplary damages.

## COUNT 5: RICO

123. ILCC incorporates by this reference all the allegations set forth in this complaint.

124. Defendant Haynes and Defendant Raines have engaged in a pattern of racketeering activity by engaging in wire and mail fraud to obtain access to loan proceeds advanced by ILCC under the Loan Agreement.

125. Haynes and Raines used the Loan Proceeds to maintain an interest in an enterprise engaged in interstate activity, including but not limited to, the ongoing operations of Highland Park, IDC, and efforts to defraud potential investors in fraudulent bond schemes.

126. Haynes and Raines were employed by an enterprise engaged in interstate commerce, and conducted the enterprise's affairs through a pattern of racketeering activity, including repeated acts of wire fraud and attempted wire fraud.

127. Haynes and Raines conspired to support an enterprise engaged in interstate commerce through repeated acts of wire and mail fraud.

128. ILCC's business interests were injured through Haynes and Raines racketeering activities in the amount of the Loan Proceeds fraudulently obtained through said racketeering activities.

129. ILCC is entitled to treble damages and an award of reasonable attorneys' fees under 18 U.S.C. § 1964.

WHEREFORE ILCC respectfully requests the following relief:

A. For judgment in ILCC's favor and against Defendant IDC in the amount of $2,229,750.00, plus prejudgment interest from March 4, 2021, through the date of judgment, on account of Defendant IDC's breach of the Loan Agreement;

B. For Judgment in ILCC's favor and against Defendants IDC and Highland Park for possession of the loan collateral more particularly identified above;

C. In the alternative, for Judgment in ILCC's favor and against all Defendants in the amount of the fair market value of the collateral more particularly identified above, caused by Defendants' conversion of collateral;

D. For judgment against all Defendants in the amount of $1,500,000.00 caused by the fraud and deceit of the Defendants;

E. For judgment against all Defendants in the amount of $4,500,000.00 for treble damages caused by the racketeering activities engaged in by all defendants;

F. For an award of ILCC's reasonable costs herein, including reasonable attorneys' fees, as authorized by contract and applicable state and federal law;

G. For an award of prejudgment interest and any such other relief as this Court finds equitable and appropriate.

Dated at Sioux Falls, South Dakota, this 4th day of March, 2021.

                                          DAVENPORT, EVANS, HURWITZ & SMITH, L.L.P.

                                          Mitchell A. Peterson
Joel Rische
206 West 14th Street
PO Box 1030
Sioux Falls, SD 57101-1030
Telephone: (605) 336-2880
Facsimile: (605) 335-3639
E-mail: mpeterson@dehs.com
E-mail: jrische@dehs.com
*Attorneys for Plaintiffs*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
INDIAN LAND CAPITAL COMPANY, LLC

### DEFENDANTS
SEE ATTACHMENT TO CIVIL COVER SHEET

**(b)** County of Residence of First Listed Plaintiff: **RAMSEY CO., MN**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Joel Rische, Davenport Evans Hurwitz & Smith LLP, 206 W. 14th St., Sioux Falls, SD 57104

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**TORTS — PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**TORTS — PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS — Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
- **Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [x] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Breach of Contract/Debt; Claim and Delivery; Conversion of Collateral; Fraud and Deceit; RICO

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 8,229,750.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: March 8, 2021

SIGNATURE OF ATTORNEY OF RECORD: /s/ Joel Rische

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## ATTACHMENT TO CIVIL COVER SHEET

DEFENDANTS:

INFRASTRUCTURE DEVELOPMENT COOPERATIVE, LCA

HIGHLAND PARK MANAGEMENT, LLC

L. STEVEN HAYNES

RAYCEN RAINES