# LOAN AGREEMENT

**THIS LOAN AGREEMENT** (this "Agreement") is made and entered into as of the ___ day of February 2016, by and between **Infrastructure Development Cooperative**, **LCA** a Washington, DC limited cooperative association ("Borrower"), and **Indian Land Capital Company, LLC**, a limited liability company organized under the laws of the State of Minnesota (the "Lender"). For and in consideration of the mutual promises and agreements contained herein, the parties confirm and agree as follows:

## ARTICLE 1
## COMMITMENT; ADVANCES

1.1. Note. Subject to the terms, provisions, conditions, covenants and agreements of the Transaction Documents (defined in Section 2.1 below) the Parties hereby agree and acknowledge that the Lender shall lend to the Borrower and the Borrower shall borrow from Lender and shall repay to Lender the principal amount of ONE MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($1,500,000.00) plus all interest accrued thereon and all other charges herein permitted, (hereinafter called the "Loan"). The obligation of the Borrower to repay the Loan shall be evidenced by a Promissory Note (the "Note") of the Borrower substantially in the form attached hereto as Exhibit A, executed, delivered and dated as of the date hereof (hereafter known as the "Closing Date") payable to the order of Lender for the amount of the Loan with interest as provided in the Note.

1.2. Term and Repayment. The Loan shall be repaid by the Borrower as provided in the Transaction Documents. All payments shall be applied first to permitted charges, then to accrued interest and then to principal. All payments will be made promptly to Lender at Indian Land Capital Company, 151 East County Road B2, Little Canada, Minnesota 55117, or such other place as Lender may later designate in writing.

1.3. Purpose. The purpose of the Loan is to finance the development of a tribal propane supply and distribution project ( the "Program") as more specifically described in "Schedule 1" attached hereto.

1.4. Advances. The Loan shall be advanced by the Lender as a single advance ("Advance") on or after the Closing Date.

1.5. Collateral. The Borrower does hereby pledge and does hereby grant its interest in all assets held by the Borrower as security for repayment of the Note (the "Collateral"). No member of the Borrower shall be responsible for repayment under 1.2.

## ARTICLE 2
## CONDITIONS PRECEDENT FOR CLOSING AND ADVANCES

The obligation of Lender to make the Loan to the Borrower is subject to the following express conditions precedent:

118833583_2

1

EXHIBIT 1

2.1.   Transaction Documents.   Borrower shall have executed (or obtained the execution or issuing of) and delivered to Lender the following documents (collectively, the "Transaction Documents"), all in form satisfactory to Lender:

(a) the Note,

(b) this Agreement,

(c) a Borrower's Certification substantially in the form and content as attached hereto as Exhibit B,

(d) a Compliance Agreement substantially in the form and content as attached hereto as Exhibit C,

(e) copies of titles to all vehicles and other assets (to the extent applicable) utilized by the Borrower as part of the Program;

(f) certified copy of the executed Borrowing Resolution of the Borrower related to this Loan in a form and content acceptable to the Lender, and

(g) Such other instruments, certificates and agreements as are required by the Lender to be delivered to Lender in connection with the Loan.

2.2.   Expenses and Closing Costs.   In consideration of the Lender's expenses associated with processing and servicing this Loan, the Borrower agrees to pay to the Lender at the Closing Date a loan origination and documentation fee in the amount of $150,000.00 (i.e., 10% of Loan amount) and an additional amount to be itemized in a settlement statement to be provided by Lender on the Closing Date to reimburse Lender for the payment of expenses and third party fees incurred in connection with the origination of this Loan, including but not limited to, filing fees and the Lender's reasonable attorney's fees.

2.3.   Liens and Security Interests.   The Lender's liens, security interests and other encumbrances upon the Collateral to secure the Loan shall be attached, created, filed, perfected and recorded in accordance with applicable law and notice of such liens, security interests and encumbrances shall be provided to such parties as required by law.  The Lender shall be provided UCC searches or other written evidence as required by the Lender with respect to the validity, enforceability and priority of its liens, security interests and other encumbrances upon the collateral to secure the Loan.

2.4.   Organizational Documents.   The Borrower shall have delivered to the Lender certified copies of its Constitution and Bylaws.

2.5.   Governmental Body Approval.   The Borrower shall have delivered to the Lender certified copies of the authorization of its Business Committee approving the Transaction Documents and the transactions contemplated thereby, including provisions providing for a limited waiver of sovereign immunity and provisions authorizing the Chairman, or other proper officials of the Borrower, to execute and deliver the same to the Lender on behalf of the Borrower.

2.6.   Governmental Approval.  The Borrower shall have secured all necessary approvals or consents, if required, of governmental bodies having jurisdiction with respect to any business contemplated by the Borrower in connection with the use of the proceeds of the Loan or the Collateral to be given to secure the Loan.

2.7.   Approval of Others.  The Borrower shall have secured all necessary approvals or consents required with respect to this transaction by any mortgagor, creditor, or other party having any interest in the transactions contemplated by the Transaction Documents.

2.8.   Representations True.  All representations and warranties by Borrower shall remain true and correct and all agreements that Borrower is to have performed or complied with by the date hereof and as of the Closing Date.

2.9.   No Event of Default.  No Event of Default (as defined in Section 7.1 below) of the Loan exists, and no event has occurred and no condition exists that, after notice or lapse of time, or both, would constitute an Event of Default.

2.10.  Right to Advances.  Borrower shall have no right to any Advance other than to have the same disbursed by Lender in accordance with the disbursement provisions contained in this Agreement.  Any assignment or transfer, voluntary or involuntary, of this Agreement or any right hereunder shall not be binding upon or in any way affect Lender without its written consent.

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES

Borrower represents and warrants to Lender as follows:

3.1.   Organization.  The Borrower is a member-owned limited cooperative association incorporated under the laws of the District of Columbia organized jointly by several federally recognized Indian tribes to further infrastructure development programs for tribes.  The Board of Directors as the governing body of the Borrower has authority to enter into the Transaction Documents and to effect the transactions contemplated of the Borrower under the Transaction Documents.

3.2.   Duly Authorized.  The making and performance by the Borrower of this Agreement and the execution and delivery of the Note, and any and all of the other Transaction Documents have been duly authorized by all necessary actions of the Borrower and will not violate any law, rule, regulation, order, writ, judgment decree, determination, or award presently in effect having applicability to the Borrower or any provision of the Borrower's Constitution and Bylaws or any Resolution of the Borrower's Board of Directors or Business Committee or result in a breach of, or constitute a default under any indenture or bank loan, or credit agreement or any other agreement or instrument to which the Borrower is a party or by which its Program may be bound or affected.

3.3.   Legally Binding Instruments.  When this Agreement and the other Transaction Documents are executed by the Borrower and the Lender, and when the Transaction Documents are executed and delivered by the Borrower for value, each Transaction Document shall

constitute the legal, valid, and binding obligation of the Borrower enforceable against Borrower in accordance with its terms, including the provisions therein regarding a limited waiver of sovereign immunity and choice of law. Any security agreements, including assignments and financing statements and documents creating liens against personal Program, shall constitute legal, valid and binding liens upon the Collateral, and except as otherwise provided in this Agreement or the other Transaction Documents, free and clear of all prior liens and encumbrances.

3.4.   No Legal Suits.  There are no legal actions, suits, or proceedings pending or, to the knowledge of the Borrower, threatened against the Borrower before any court or administrative agency, which if determined adversely to the Borrower, would have a material adverse effect on the financial condition or business of the Borrower.

3.5.   No Further Legal Authorization Needed.  No further authorization, consent or approval, or any formal exemption of any governmental body, regulatory authorities (tribal, federal, state or local), including the Borrower's Board of Directors, Borrower's Business Committee, or mortgagee, creditor, or third party is or was necessary to the valid execution and delivery by the Borrower of this Agreement or any of the other Transaction Documents.

3.6.   No Default.  The Borrower is not in default of any obligation, covenant, or condition contained in any bond, debenture, note or other evidence of indebtedness or any lease, mortgage, deed of trust or collateral instrument securing the same.

3.7.   Compliance with Law.  The Borrower has all permits, licenses, authorizations, orders and approvals of, and has made and will make all filings, notices, applications and registrations with, tribal, federal, state or local governmental or regulatory bodies that are required in order for the management and operation of its business as such business is intended to be operated. All such permits, licenses, certificates of authority, orders and approvals are in full force and effect and no suspension or cancellation of any of them is threatened or will occur. All such filings, notices, applications and registrations are current and will continue to be made when due.

3.8.   Statements and Reports True.  All statements as to ownership and other statements or reports previously or hereafter given to Lender by or on behalf of Borrower are and shall be true, complete and correct as of the date thereof. There has been no material adverse change in the financial condition or the results of the operation of Borrower since the latest financial statements of Borrower given to Lender.

3.9.   Taxes Paid.  The Borrower has filed all tax returns which are required, if any, and has paid all taxes which have or may become due pursuant to said returns or pursuant to any assessments levied against the Borrower or its personal or real Program by any taxing agency, native, tribal, federal, state or local. No tax liability has been assessed by any taxing agency, native, tribal federal, state or local, for taxes materially in excess of those already provided for and the Borrower knows of no basis for any such deficiency assessment.

3.10.   Purpose.  The proceeds of the Loan have been used solely for business or commercial purposes as set forth herein and, as such, none of such proceeds will be used for

personal, family, household or agricultural purposes. No portion of the Loan shall be used directly or indirectly to purchase ineligible securities, as defined by applicable regulations of the Federal Reserve Board.

3.11. No Adverse Change. There has been no adverse change since the date of loan application in the financial conditions, organization, operation, business prospects, fixed properties, or personnel of the Borrower.

3.12. Properties. The Borrower has good and marketable title to all of the Borrower's properties and assets, and all such properties and assets are free and clear of liens, except as disclosed in the financial statements previously furnished to the Lender or as otherwise permitted or required by the provisions of this Agreement and the Transaction Documents.

3.13. Continuing Compliance. All representations, warranties and covenants of the Borrower are true and correct as of the date hereof and shall continue to be true and correct until the Loan and all indebtedness hereunder have been paid in full and all of Borrower's obligations hereunder have been fully discharged. As requested from time to time by the Lender, the Borrower shall provide the Lender in form and content satisfactory to it a certificate to the effect that the representations, warranties and covenants made herein by the Borrower are at such time true and correct. Lender shall be deemed to have relied upon each and every warranty and representation of the Borrower, regardless of any investigation heretofore or hereafter made by or on behalf of the Lender.

## ARTICLE 4
## AFFIRMATIVE COVENANTS

From the Date hereof and until the Loan and all other indebtedness hereunder have been paid in full and all of Borrower's obligations hereunder have been fully discharged:

4.1. Compliance with Loan Documents. Borrower shall punctually make all payments of interest, principal on and other amounts under the Loan and shall punctually keep and comply with all terms, conditions and provisions thereof.

4.2. Payment of Other Indebtedness. Borrower shall punctually pay the principal, interest and other charges due on any other indebtedness now or hereafter at any time owing by the Borrower to the Lender or any other lender.

4.3. Publicity. After the execution of this Agreement, any and all publicity releases to newspapers of general or limited circulation or trade publications announcing any of the financing by Lender provided for herein shall be issued by or subject to prior approval by Lender. The Borrower does hereby consent and authorize the Lender to publicly disclose the following information about the Loan: (a) the principal amount of the Loan and the general purpose thereof, and (b) the Borrower.

4.4. Payment of Taxes. Borrower shall pay all of its current tax obligations before delinquent, including all tribal, federal, state and local taxes and all other payments required under native, tribal, federal, state or local law.

4.5. <u>Books and Records; Access</u>. Borrower shall maintain, in a safe place, proper and accurate books and records relating to its operations and its business affairs in connection with the Project. Lender shall have the right from time to time to examine, and to make abstracts from and photocopies of, Borrower's books and records.

4.6. <u>Financial Reports</u>. Borrower shall maintain a standard, modern system of accounting that reflects the application of generally accepted accounting principles, consistently applied. Borrower shall furnish to Lender or cause to be furnished to Lender as soon as available, but in no event later than 90 days of the end of each calendar quarter, the unaudited (by a certified public accountant satisfactory to the Lender) quarterly financial statements of Borrower. Moreover, Borrower shall furnish to Lender or cause to be furnished to Lender as soon as available, but in no event later than 180 days of each fiscal year end, the audited (by a certified public accountant satisfactory to the Lender) annual financial statements of Borrower. All financial statements, balance sheets and income statements provided Lender shall be certified as correct to the best knowledge and belief by the Borrower's chief financial officer. When requested by Lender, Borrower shall provide such further information as Lender may reasonably request relating to any such financial statements.

4.7. <u>Subsequent Actions</u>. Borrower shall immediately inform Lender of any actions, suits or proceedings involving Borrower that could materially and adversely affect the repayment of the Loan, the performance by Borrower under this Agreement, or the financial condition, business or operations of Borrower.

4.8. <u>Further Assurances</u>. Borrower shall execute and deliver such additional documents and do such other acts as Lender may reasonably require in connection with the Loan.

4.9. <u>Borrower Notices</u>. Borrower shall promptly give notice in writing to Lender of the occurrence of any Event of Default.

4.10. <u>Rights of Inspection</u>. The Borrower does hereby grant to the Lender, until the Note has been fully repaid with interest and other charges, the right at all reasonable hours to inspect the condition and operations of the Borrower's businesses and Program(ies), and the Borrower further agrees to provide the Lender free access to the Borrower's premises and Program(ies) for the purpose of such inspection to determine the condition of the Borrower's businesses and Program(ies). The Borrower will furnish the Lender with reasonable promptness such data and information concerning the business of the Borrower as may be requested by the Lender from time to time.

4.11. <u>Environmental Covenants</u>. The Borrower agrees to indemnify and hold the Lender harmless from any and all claims, losses, damages or liabilities, including court costs and attorneys' fees, arising out of hazardous or toxic substances or any other type of pollution which is produced by, discharged upon or into, or is related in any way to any of the following:

(a) Any premises out of which the Borrower operates.

(b) Any Program(ies) of the Borrower, including the leasehold interest to be acquired with proceeds of the Loan.

If the Lender is obligated to pay any such claims, losses, damages or liabilities, the Borrower shall pay the Lender for any such amounts within ten (10) days after receiving a notice thereof from the Lender. The Borrower hereby acknowledges and covenants to the Lender that the Borrower may not discharge any such debts or amounts through bankruptcy proceedings.

## ARTICLE 5
## NEGATIVE COVENANTS

So long as the Lender has any commitment to lend to the Borrower hereunder and until the Loan and all other indebtedness hereunder have been paid in full and all of the Borrower's obligations hereunder have been fully discharged, the Borrower shall not, without receiving the prior written consent of Lender, which consent shall not be unreasonably withheld:

5.1. Change in Accounting Period. Change the times of commencement or termination of its fiscal year or other accounting periods; or change its methods of accounting other than to conform to generally accepted accounting principles applied on a consistent basis.

5.2. Breach of Agreement. Enter into any agreement or other commitment the performance that would constitute a breach of any of the agreements, warranties, representations or covenants contained in the Agreement or any other Transaction Document.

5.3. Material Adverse Audit Findings. Receive any finding in an annual audit that in the Lender's sole discretion is materially adverse to the operations or financial condition of the Borrower.

## ARTICLE 6
## WAIVER

6.1. Waiver. Borrower waives presentment, demand, protest and notices of protest, nonpayment, partial payment and all other notices and formalities except as expressly called for in this Agreement or any other Transaction Document.

6.2. Delay or Omission. No delay or omission by Lender in exercising any right, power or remedy hereunder or any other Transaction Document, and no indulgence given to Borrower, with respect to any term, condition or provision set forth herein or therein, shall impair any right, power or remedy of Lender under this Agreement or any other Transaction Document, or be construed as a waiver by Lender of, or acquiescence in, any Event of Default. Likewise, no such delay, omission or indulgence by Lender shall be construed as a variation or waiver of any of the terms, conditions or provisions of this Agreement or any other Transaction Document. Any actual waiver by Lender of any Event of Default shall not be a waiver of any other prior or subsequent Event of Default or of the same Event of Default after notice to Borrower demanding strict performance.

## ARTICLE 7
## DEFAULT

7.1. <u>Event of Default</u>. The occurrence of any of the following events or conditions shall constitute an "<u>Event of Default</u>" under this Agreement:

(a) Any failure to pay any principal or interest under the Note when the same shall become due and payable, or the failure to pay any other sum due under the Note, this Agreement or any other Transaction Document when the same shall become due and payable.

(b) Any failure or neglect to perform or observe any of the covenants, conditions or provisions of this Agreement, the Note, any other Transaction Document (other than a failure or neglect described in one or more of the other provisions of this Section 7.1) and such failure or neglect either cannot be remedied or, if it can be remedied, it continues unremedied for a period of thirty (30) days after notice thereof to Borrower.

(c) Any warranty, representation or statement contained in this Agreement, in the Note or any other Transaction Document, or made or furnished to Lender by or on behalf of Borrower, that shall be or shall prove to have been false when made or furnished.

(d) The filing by Borrower of any proceeding under the federal bankruptcy laws now or hereafter existing or any other similar statute now or hereafter in effect; the entry of an order for relief under such laws with respect to Borrower; or the appointment of a receiver, trustee, custodian or conservator of all or any part of the assets of Borrower.

(e) The insolvency of Borrower; or the execution by Borrower of an assignment for the benefit of creditors; or the convening by Borrower of a meeting of its creditors, or any class thereof, for purposes of effecting a moratorium upon or extension or composition of its debts; or the failure of Borrower to pay its debts as they mature; or if Borrower is generally not paying its debts as they mature.

(f) The admission in writing by Borrower that it is unable to pay its debts as they mature or that it is generally not paying its debts as they mature.

(g) If Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other indebtedness, with any other creditor or person that may materially affect any of Borrower's Program or Borrower's ability to perform its obligations under this Agreement or any of the other Transaction Documents.

(h) If, with regard to the performance of the terms of any agreement with any tribal, federal, state or local governmental authority, agency or instrumentality, the Borrower fails to comply with any requirement of any such agreement within fifteen (15) days after receipt of notice in writing of such requirement or within the time specified in such notice, whichever is greater.

(i) The occurrence of any event of default under the Note, or any other Transaction Documents and the expiration of any applicable notice and cure period.

(j) If anything happens that is reasonably believed by the Lender to significantly impair the value of the Collateral or causes the Lender to reasonably believe that the Lender will have difficulty collecting the Loan.

7.2.   <u>Remedies</u>.  Upon the occurrence of any Event of Default and at any time while such Event of Default is continuing, Lender may do one or more of the following:

(a) Terminate any commitment or obligation to disburse any amounts to Borrower pursuant to the Transaction Documents.

(b) Accelerate and declare the full balance immediately due on the Note and commence suit for collection thereof.

(c) Specifically enforce the terms of the Note and other Transaction Documents.

(d) Pursue any and all other remedies available under law to enforce the terms of this Agreement and the other Transaction Documents and the Lender's rights to the Collateral identified in this Agreement and the other Transaction Documents.

(e) The remedies provided herein are not exclusive and are in addition to any other remedy available in law or equity and Borrower shall remain liable for any deficiency balance if what the Lender receives from the collateral, if any, for the Loan does not satisfy all amounts owed it by Borrower.

7.3.   <u>Enforcement Costs</u>.  Borrower shall pay all costs and expenses, including without limitation court costs and reasonable in-house and outside attorneys' fees, incurred by Lender in enforcing payment and performance of the Loan and the other indebtedness and obligations of Borrower hereunder and under the other Transaction Documents or in exercising the rights and remedies of Lender hereunder or thereunder.  In the event of any court proceedings, court costs and attorneys' fees shall be set by the court and not by jury and shall be included in any judgment obtained by Lender.

### ARTICLE 8
### MISCELLANEOUS

8.1.   <u>No Third Party Beneficiaries</u>.  This Agreement is made for the sole protection and benefit of the parties hereto and no other person or organization shall have any right of action hereon.

8.2.   <u>Integration</u>.  This Agreement and the other Transaction Documents embody the entire agreement of the parties with regard to the subject matter hereof.  There are no representations, promises, warranties, understandings or agreements expressed or implied, oral or otherwise, in relation thereto, except those expressly referred to or set forth herein.  Borrower acknowledges that the execution and delivery of this Agreement is its free and voluntary act and deed, and that said execution and delivery have not been induced by, nor done in reliance upon, any representations, promises, warranties, understandings or agreements made by Lender, its agents, officers, employees or representatives.

8.3. <u>Modifications</u>. No promise, representation, warranty or agreement made subsequent to the execution and delivery of this Agreement by either party hereto, and no revocation, partial or otherwise, or change, amendment or addition to, or alteration or modification of, this Agreement or the other Transaction Documents shall be valid unless the same shall be in writing signed by all parties hereto.

8.4. <u>No Joint Venture</u>. Lender and Borrower each have separate and independent rights and obligations under this Agreement and the other Transaction Documents. Nothing contained herein shall be construed as creating, forming or constituting any partnership, joint venture, merger or consolidation of Borrower and Lender for any purpose or in any respect.

8.5. <u>Survival</u>. All agreements, representations, and warranties made by the Borrower herein or any of the other Transaction Documents or any certificate delivered to the Lender in connection with the transactions contemplated herein or therein shall survive the making of the Loan and shall continue in force and effect so long as any amount owed to Lender under this Agreement or any of the other Transaction Documents or any extension or renewal thereof, remains outstanding.

8.6. <u>Discretionary Rights</u>. All rights, powers and remedies granted Lender herein, or otherwise available to Lender, are for the sole benefit and protection of Lender, and Lender may exercise any such right, power or remedy at its option and in its sole and absolute discretion without any obligation to do so. In addition, if, under the terms hereof, Lender is given two or more alternative courses of action, Lender may elect any alternative or combination of alternatives, at its option and in its sole and absolute discretion, and such alternative courses of action are cumulative and the taking of one alternative course of action shall not bar Lender from subsequently or concurrently pursuing another alternative course of action. All monies advanced by Lender under the terms hereof and all amounts paid, suffered or incurred by Lender in exercising any authority granted herein, including reasonable attorneys' fees, shall bear interest at the highest rate payable on the Loan until paid, and shall be due and payable by Borrower to Lender immediately without demand.

8.7. <u>Indemnity</u>. Borrower shall indemnify and hold Lender harmless from and against all claims, costs, expenses, actions, suits, proceedings, losses, damages and liabilities of any kind whatsoever, including but not limited to reasonable attorneys' fees and expenses, arising out of any matter relating, directly or indirectly, to the Loan or out of any other matter whatsoever related to this Agreement or the other Transaction Documents, but excluding any claim or liability which arises as the direct result of the gross negligence or willful misconduct of Lender. This indemnity provision shall continue in full force and effect and shall survive not only the making of the Loan but shall also survive the repayment of the Loan and the performance of all of Borrower's other obligations hereunder.

8.8. <u>Time of Essence</u>. Time is expressly made of the essence of this Agreement.

8.9. <u>Notices</u>. All notices, consents, requests, demands or other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given to a party hereto if delivered by and delivery or mailed by recognized overnight courier, or by first class mail, postage prepaid, to the Lender and the Borrower at its address and

agent as set forth immediately below, or at such other addresses or agents as any party may have designated in writing to any other party hereto. This section does not limit other means of delivering written notice if said notices are actually received. Any notice to Lender shall be sent to Indian Land Capital Company, LLC, Attention: President, 151 East County Road B2, Little Canada, Minnesota 55117. Any notice to the Borrower shall be sent to Infrastructure Development Cooperative, Attention: Executive Director, Gabriel Doney, 300 New Jersey Ave NW, Suite 300, Washington, DC, 20001.

8.10. <u>Payment of Costs</u>. Borrower shall pay all costs and expenses arising from the preparation of this Agreement and the closing of the Loan as detailed in Section 2.2 Borrower's obligation to pay such costs and expenses shall continue and remain even if the Loan does not close for any reason other than default by the Lender.

8.11. <u>Severability</u>. The illegality or unenforceability of any provision of this Agreement or any instrument or agreement required hereunder shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Agreement or any instrument or agreement required hereunder.

8.12. <u>Governing Law</u>. This Agreement and the other Transaction Documents and the rights and obligations of the parties hereto shall be governed by and construed in accordance with the laws the State of Minnesota, including the laws related to the Uniform Commercial Code adopted by said State, without regard to the conflicts of law rule of such Tribe or State.

8.13. <u>Binding Arbitration</u>. Any dispute, claim or controversy arising out of or relating to this Agreement or any of the other Transaction Documents or the breach hereof or thereof, or the making of the Loan, including claims of fraud in the inducement (hereafter referred to as the "Financing Disputes"), shall be settled by arbitration under the rules of commercial arbitration of the American Arbitration Association (the "AAA") and Title 9 of the U.S. Code, as modified by this Section, and conducted at a location chosen by the Lender in Minneapolis, Minnesota..

Any party may, by written notice to the other party after such a dispute, claim or controversy has arisen hereunder, appoint one arbitrator. The other party shall, by written notice, within twenty (20) days after the receipt of such notice by the first party, appoint a second arbitrator, and in default of such appointment the first arbitrator appointed shall be the sole arbitrator. When two (2) arbitrators have been appointed as hereinabove provided, they shall, if possible, agree on a third arbitrator who shall be appointed by written notice signed by both of them within thirty (30) days thereafter with a copy mailed to each party hereto within ten (10) days after such appointment; provided that if the two arbitrators cannot agree upon a third, they shall apply to the AAA for such appointment whose decision shall be final.

No arbitrator shall be related to or affiliated with, or shall have represented in a legal capacity any party hereto. The arbitrators shall apply the governing law specified in Section 8.12, and shall follow such rules of discovery and evidence as the United States District Court for the State of Minnesota would apply. Within sixty (60) days of commencement of the arbitration actions, and after receiving evidence and hearing witnesses, if any, the arbitrators shall render their award, accompanied by findings of fact and a statement of reasons for the decision. The arbitrators shall have the authority to award in connection with a Financing

Dispute any remedy or relief that a court of competent jurisdiction could order or grant, including, without limitation, equitable remedies, specific performance of any obligation created under this Agreement or any other Transaction Document, and the issuance of an injunction. The award of the majority of the arbitrators shall be conclusive and binding upon the parties. Any award rendered therein may be entered in any court of competent jurisdiction. Judgment on any final arbitration award may be entered in any court of competent jurisdiction. Any review of the arbitration decision and award shall be limited to enforcement of the decision and award and the findings of the arbitrator(s) shall not be re-litigated. The parties further acknowledge and agree that any party may apply to any court of competent jurisdiction, and seek injunctive relief so as to maintain the status quo until such time as the arbitration award is rendered or the controversy is otherwise resolved. Each of the parties hereby agrees that this arbitration provision is valid and enforceable and therefore waives any defense or assertion to the contrary.

8.14. <u>Additional Action</u>. The Borrower agrees to execute such other documents and instruments and take such additional action as may be reasonably requested by the Lender for the purpose of effectuating and carrying out the intent and purposes of this Agreement and the other Transaction Documents and the transactions contemplated hereby and thereby.

8.15. <u>Successors and Assigns</u>. This Agreement and the other Transaction Documents shall be binding upon the Borrower and its successors and assigns, except that the Borrower may not assign or transfer its rights without prior written consent of the Lender. This Agreement and the other Transaction Documents shall inure to the benefit of the Lender and unless otherwise expressly provided in a particular provision hereof, all subsequent successors and assigns, including participants, of the Transaction Documents.

8.16. <u>Headings</u>. The headings or captions of sections and paragraphs in this Agreement are for reference only, do not define or limit the provisions of such sections or paragraphs, and shall not affect the interpretation of this Agreement.

8.17. <u>Prepayment</u>. The Borrower may prepay the Note per the terms and conditions as outlined in the Note.

8.18. <u>Participations</u>. Lender, at any time, shall have the right to sell, assign, transfer, negotiate or grant participation interests in the Loan and in any of the Transaction Documents. Borrower hereby acknowledges and agrees that any such disposition may give rise to a direct obligation of Borrower to each such assignee or participant. Lender is authorized to furnish to any participant or prospective participant any information or document that Lender may have or obtain regarding the Loan, Borrower or any guarantor of the Loan.

8.19. <u>Set-off</u>. In addition to all liens upon, and rights of setoff against, the monies, securities or other Program of Borrower given to Lender by law, Lender shall have a lien and a right of setoff against, and Borrower hereby grants to Lender a security interest in, all monies, securities and other Program of Borrower now and hereafter in the possession of or on deposit with Lender, whether held in a general or special account or deposit, or for safekeeping or otherwise; every such lien and right of setoff may only be exercised with proper notice and demand to Borrower and upon Borrower's default in the payment of the indebtedness of Borrower to Lender arising under or in connection with the Note, this Agreement, or any other

Transaction Document, or upon the occurrence of any Event of Default under this Agreement or any other Transaction Document. No lien or right of setoff shall be deemed to have been waived by any act or conduct on the part of Lender, by any neglect to exercise such right of setoff or to enforce such lien, or by any delay in so doing.

8.20. <u>Counterparts</u>. This Agreement may be executed in counterparts, all of which executed counterparts shall together constitute a single document. Signature pages may be detached from the counterparts and attached to a single copy of this Agreement to physically form one document.

8.21. <u>JURY WAIVER</u>. THE BORROWER AND THE LENDER (BY THEIR ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE UNDERSIGNED AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT OR ANY OF THE OTHER TRANSACTION DOCUMENTS, THE TRANSACTIONS CONTEMPLATED HEREIN OR THEREIN OR ANY RELATIONSHIP BETWEEN THE UNDERSIGNED AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING DESCRIBED HEREIN OR IN THE OTHER TRANSACTION DOCUMENTS.

**IN WITNESS WHEREOF**, these presents are executed as of the date first indicated above.

**BORROWER:**

**INFRASTRUCTURE DEVELOPMENT COOPERATIVE, LCA**

By: *[signature]*

Arthur Angle, President

**LENDER:**

**INDIAN LAND CAPITAL COMPANY, LLC**

By: *[signature]*

Rjay J. Brunkow, CEO