UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| INDIAN LAND CAPITAL COMPANY, LLC, | CIV. 21-5015-JLV |
| Plaintiff, | |
| vs. | |
| INFRASTRUCTURE DEVELOPMENT COOPERATIVE, LCA; HIGHLAND PARK MANAGEMENT, LLC; L. STEVEN HAYNES; and RAYCEN RAINES, | ORDER |
| Defendants, | |
| HIGHLAND PARK MANAGEMENT, LLC, and L. STEVEN HAYNES, | |
| Cross-Claim Plaintiffs, | |
| vs. | |
| INFRASTRUCTURE DEVELOPMENT COOPERATIVE, LLC, | |
| Cross-Claim Defendant. | |

**INTRODUCTION**

Indian Land Capital Company, LLC, filed a multi-count amended complaint against the defendants.   (Docket 13).   Defendant Raycen Raines filed a motion to dismiss counts four and five of the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) as those counts relate to Mr. Raines.   (Docket 15). Plaintiff opposes Mr. Raines' motion.   (Docket 19).   Mr. Raines filed a reply brief and clarification together with an exhibit in support of his motion to dismiss. (Dockets 21, 22 & 22-1).   For the reasons stated below, Mr. Raines' motion to dismiss is granted in part and denied in part.

**ANALYSIS**

1.   <u>FED. R. CIV. P. 12(b)(6)</u>

Rule 12(b)(6) provides for dismissal if the plaintiff fails to state a claim upon which relief can be granted.   Fed. R. Civ. P. 12(b)(6).   In evaluating the defendant's Rule 12(b)(6) motion, the court accepts as true all of the factual allegations contained in plaintiff's amended complaint and grants all reasonable inferences in favor of plaintiff as the nonmoving party.   <u>Braden v. Wal-Mart</u>, 588 F.3d 585, 594 (8th Cir. 2009) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ") (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009)).   <u>See also Crooks v. Lynch</u>, 557 F.3d 846, 848 (8th Cir. 2009) (the court must review "a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the facts alleged in the complaint as true and granting all reasonable inferences in favor of the plaintiff, the nonmoving party.") (brackets omitted).   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"   <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).   "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Iqbal</u>, 556 U.S. at 679.   At this point in the litigation, the court is "bound to accept as true, for purposes of [a Rule 12(b)(6)] motion, the facts alleged by the plaintiff." <u>Stephens v. Associated Dry Goods Corp.</u>, 805 F.2d 812, 814 (8th Cir. 1986).

2

2.   THE AMENDED COMPLAINT

Plaintiff Indian Land Capital Company, LLC ("ILCC") filed a five-count amended complaint.   (Docket 13).   For purposes of this order only, the "[b]ackground" alleged in the amended complaint and supporting plaintiff's claims is incorporated by reference.   Id. ¶¶ 20-99.   The counts are summarized as follows.

Count 1 alleges Infrastructure Development Cooperative ("IDC") breached its contract with ILCC and failed to perform under a promissory note and loan agreement.   Id. ¶¶ 123-25.   ILCC alleges "[a]s of March 4, 2021, the amount due and owing is $1,500,000.00 in principal and $729,750.00 in interest, a sum total of $2,229,750."   Id. ¶ 127.   Default judgment was entered in favor of ILCC and against IDC on December 3, 2021.   (Docket 31).

Count 2 alleges that by the loan agreement, IDC granted ILCC a security agreement in six titled vehicles.   Id. ¶ 129.   ILCC alleges it perfected its security interest in the vehicles.   Id. ¶ 131.   Because of IDC's breach of contract, ILCC alleges it is entitled "to immediate possession of the [v]ehicles."   Id. ¶ 132.

Count 3 alleges IDC sold the encumbered vehicles without ILCC's consent. Id. ¶ 136.   By IDC allegedly converting the funds received from the sale of the vehicles, ILC claims to have suffered damages of "approximately $400,000."   Id. ¶ 138.

Count 4 alleges fraud and deceit against all defendants, including Raycen Raines.   Id. at p. 17.   Incorporating all earlier allegations in the amended complaint, count 4 alleges "Haynes, Raines, Highland Park, and IDC made representations of fact, which Haynes, Raines, Highland Park, and IDC knew were false, or had reason to know were false, at the time they were made."   Id.

3

¶ 140.   Plaintiff alleges Mr. Raines and the other defendants made these "misrepresentations with the intent of inducing ILCC's reliance on the representations." Id. ¶ 141.   The amended complaint alleges "ILCC reasonably relied on the misrepresentation by entering into the Loan Agreement and the Amendments." Id. ¶ 142.   ILCC alleges it "has been injured by the misrepresentations in an amount not less than the loan proceeds advanced to IDC, and accrued interest." Id. ¶ 143.   Plaintiff alleges Mr. Raines and the other three defendants "made the misrepresentations intentionally, knowingly, and maliciously," entitling ILCC "to punitive or exemplary damages." Id. ¶ 144.

Count 5 alleges a RICO [Racketeer Influenced and Corrupt Organizations Act] violation against Mr. Raines and Mr. Haynes. Id. ¶¶ 145-52.   Again incorporating all earlier allegations in the amended complaint, count 5 alleges Mr. Haynes and Mr. Raines "were members of an association of persons formed for the common purpose of engaging in a course of conduct to obtain bond proceeds through fraudulent means." Id. ¶ 146.   Plaintiff alleges the defendants "pursued the fraudulent bond scheme through, and by engaging in, a pattern of racketeering activity, including repeated acts of wire fraud to obtain access to loan proceeds advanced by ILCC under the Loan Agreement and additional extensions." Id. ¶ 147.   The amended complaint alleges the "pattern of racketeering activity and the fraudulent bond scheme were conducted through means of interstate commerce, including interstate wire communication, and affected interstate commerce." Id. ¶ 148.   According to the amended complaint, defendants "used the Loan Proceeds for their personal use and to further the fraudulent bond scheme in an attempt to defraud potential investors in the fraudulent bond scheme." Id. ¶ 149.   The amended complaint alleges

the two defendants "conspired to support the enterprise engaged in interstate commerce through repeated acts of wire and mail fraud." Id. ¶ 150.   The amended complaint alleges as a result of their "racketeering activities, ILCC's business interests were injured . . . in an amount not less than the Loan Proceeds fraudulently obtained through [the alleged] racketeering activities." Id. ¶ 151.   Based on the defendants' RICO activities, ILCC alleges it "is entitled to treble damages and an award of reasonable attorneys' fees under 18 U.S.C. § 1964." Id. ¶ 152.

The allegations of the amended complaint will be referenced where necessary to resolve Mr. Raines' motion to dismiss.

3.   DEFENDANT RAINES' MOTION TO DISMISS

Mr. Raines argues:

> Instead of simply filing a breach of contract action against IDC, ILCC has also named Highland Park Management, LLC, L. Steven Haynes and Raines as Defendants.   With respect to Raines, the Amended Complaint asserts a fraud and deceit claim (Count Four) and a civil RICO claim (Count Five) that arise out of IDC's alleged breach of the Loan Agreement.   Yet, Raines is not a party to the Loan Agreement or either of the extensions of that Agreement.   Put simply, there is no legitimate reason for Raines to be named in this case.

(Docket 16 at p. 2).

Mr. Raines submits the amended complaint fails to plead in both counts 4 and 5 "with the particularity" the conduct required by Fed. R. Civ. P. 9(b).   Id. Specifically, defendant asserts the amended complaint fails to articulate "the particular misrepresentation . . . made" or that ILCC reasonably relied on his statement in deciding whether to contract with IDC.   Id.   "With respect to the RICO claim," Mr. Raines alleges the amended complaint "fails to adequately

5

plead an enterprise separate and apart from the persons involved in the alleged enterprise, fails to plead a sufficient pattern of racketeering conduct, and fails to plead with particularity the predicate acts of either mail or wire fraud against Raines." Id.

A.    COUNT 4

Mr. Raines submits count 4 fails to comply with the particularity provision of Rule 9(b).   Id. at p. 6 (referencing Fed. R. Civ. P. 9(b)).   As part of this argument, he asserts the amended complaint fails to articulate "allegations supporting the essential elements of a fraud claim."   Id. at p. 7 (referencing Stene v. State Farm Mutual Automobile Ins. Co., 583 N.W.2d 399, 404 (S.D. 1998); Brookings Municipal Utilities, Inc., v. Amoco Chemical Co., 103 F. Supp. 2d 1169, 1177 n.10 (D.S.D. 2000)).

1.    Execution of the Loan Agreement

Mr. Raines contends the amended complaint, while alleging the details of the loan financing, does not mention him.   (Docket 16 at p. 9) (referencing Docket 13 ¶¶ 53-69).   The amended complaint alleges that "[i]n late 2015 and early 2016 Haynes, in pursuit of the bond scheme, contacted ILCC to obtain 'bridge financing' ostensibly to begin funding the Project while the bonding . . . was being finalized."   (Docket 13 ¶ 53).   Bridge financing was consummated by the execution of the loan agreement by ILCC and IDC on February 2, 2016. (Docket 13 ¶ 79).   Under the agreement, ILCC advanced $1,500,000 to IDC in exchange for its promise to repay the loan principal and interest.   Id. ¶ 80.

Mr. Raines points out the amended complaint alleges ILCC "in reasonable reliance on the representations made by Haynes on behalf of Highland Park and IDC" entered into the loan agreement.   (Docket 16 at p. 7) (citing Docket 13 ¶ 79; emphasis omitted).   Mr. Raines argues the amended complaint "fail[s] to plead actual reliance on any statement made by Raines with respect to ILCC executing the Loan Agreement with IDC."   Id.   Mr. Raines submits the amended complaint fails to identify the particular alleged misrepresentations made by him to ILCC prior to the execution of the loan agreement.   Id. at p. 8.   Mr. Raines contends by the time he "allegedly made any misrepresentations . . . the [loan] proceeds had already been paid to IDC, and IDC had already defaulted."   Id.

2.    Execution of the Extension Agreement

Mr. Raines submits the amended complaint, "[u]nable to overcome the hurdle," that he "made no representations during the original negotiations," now alleges "ILCC 'relied on Haynes' and Raines' misrepresentations and agreed to an *extension* of the . . . Loan [Agreement].' "   Id. at pp. 7-8 (emphasis in original; citing Docket 13 ¶ 102).   Mr. Raines argues the amended complaint "fails to plead any facts as to why any statements regarding the use of the loan proceeds would have caused ILCC to extend the maturity date on the Loan."   Id. at p. 8. He contends "the use of the loan proceeds was immaterial after the point of default and it was unreasonable for ILCC to have relied on any alleged representations made at that point . . . regarding the use of the proceeds."   Id.

7

With both the Loan Agreement and the Extension Agreement, Mr. Raines submits the allegations have not "plead specifically *what exactly* Raines stated and *how* he stated it to ILCC." Id. at p. 9 (emphasis in original). Nor does the amended complaint, in Mr. Raines' view, "allege[] the date or the time at which the alleged statements . . . were made" and "whether [his] statements were made on the telephone or by email." Id. Without this information, Mr. Raines argues the allegations fail to "meet the heightened Rule 9(b) requirements." Id.

Next, Mr. Raines contends since he represented neither party to the loan documents, any statements he made could not have been made on behalf of an entity obligated under those documents. Id. Finally, he asserts he "made no representations regarding funding any project. . . . made no representations regarding any proposal to obtain bridge financing from ILCC. . . . [and] made no representations regarding any bond issuance or any rating related to any bond." Id. "Based on this threshold pleading failure" Mr. Raines argues "Count Four should be dismissed." Id.

In response, ILCC argues the principal purpose of Rule 9(b) is to allow a defendant to respond and prepare his defense to a fraud charge. (Docket 19 at p. 6). ILCC asserts "the particularity requirement of Rule 9(b) should not mute the general pleadings principles of [Rule 8] and that instead, the two rules should be harmonized." Id. (reference omitted). "If the alleged fraud involved either a course of conduct over a period of time or a series of transactions," ILCC submits "it is not necessary to recite in detail the fact of each transaction of the

8

fraudulent scheme." <u>Id.</u> (references omitted).   Plaintiff argues it "has met Rule 9(b)'s particularity requirement if the pleadings unambiguously state the core of the fraud claims against the defendant and the factual grounds upon which the claims are based." <u>Id.</u> at p. 7 (reference omitted).

ILCC asserts the amended complaint states with sufficient particularity a fraud claim.   The particulars of those allegations are:

> During the original loan negotiations, Raines, Haynes, and IDC misrepresented WLCC's [Wakpamni Lake Community Corporation] membership in IDC as membership by the Oglala Sioux Tribe to induce ILCC into executing the original loan.   (Docket 13 ¶¶ 73-78).
>
> Raines then made misrepresentations, caged as statements of fact, concerning his participation in both loan extension negotiations on behalf of Oglala Sioux Tribe and that the loan proceeds were being used for their intended purpose under the Project.   <u>Id.</u> ¶¶ 98-106.
>
> Raines knew these statements were untrue when he made them throughout both extension negotiations.   <u>Id.</u> ¶¶ 100 & 140.
>
> Raines made the statements with the explicit intent to induce ILCC into entering into both loan extensions.   <u>Id.</u> ¶¶ 101, 110 & 113.
>
> ILCC relied on Raines' misrepresentations during those negotiations, and instead of taking action to recover the loan proceeds, ILCC entered into both extension agreements.   <u>Id.</u> ¶¶ 102 & 114.
>
> Raines' misrepresentations clearly induced ILCC to act to its detriment in that ILCC failed to take action to recover the loan proceeds and allowed additional interest to accrue based on Raines' misrepresentations.   <u>Id.</u> ¶¶ 106, 114-116 & 118.
>
> Instead of collecting its debt, ILCC incurred increased indebtedness and is out millions of dollars based on said misrepresentations.   <u>Id.</u>

(Docket 19 at pp. 7-8).

ILCC argues the "Amended Complaint and its incorporated Exhibits sufficiently identify the statements made and the timeframe in which they were made to satisfy Rule 9." Id. at p. 8.   Because Mr. Raines' misrepresentations "were made through multiple negotiations over the course of several weeks and months," ILCC submits "specific dates and times of misrepresentations are not required under Rule 9(b)." Id. at p. 9 (references omitted).

ILCC contends Mr. Raines' argument that the amended complaint fails to allege reliance on his misstatements, "ignores the detrimental reliance, clearly plead, in ILCC's delaying or foregoing action to collect or recover its debt or the collateral securing it based on Raines' actions." Id. at p. 10.   Plaintiff argues:

> In reliance on Raines' misrepresentations, ILCC agreed to both extensions of the bridge loan to [its] detriment, which led to delay in action to recover the loan proceeds, allowed additional interest to accrue based on Raines' misrepresentations, and allowed the collateral to be converted. . . . Instead of collecting its debt, ILCC incurred increased indebtedness and is out millions of dollars.

Id. (referencing Docket 13 ¶¶ 102-18).   In ILCC's view, the amended complaint plead reliance as required by Rule 9(b).   Id.

Finally, ILCC submits Mr. Raines' objection that he was not a party to the original loan agreement and therefore cannot be charged with fraud is without merit.   Id.   ILCC asserts there is no element of "privity" required under South Dakota law for an actionable "claim of fraud and deceit."   Id. (referencing Stabler v. First State Bank of Roscoe, 865 N.W.2d 466, 477 (S.D. 2015)).

In reply, Mr. Raines contends "[t]he extension agreement confirms that the maturity date was extended based on IDC's agreement to make installment

payments *not* because Plaintiff reasonably relied on any representations by Raines." (Docket 21 at p. 8) (emphasis in original). A claim by ILCC that it relied on his representations "was unreasonable as a matter of law" according to Mr. Raines because " '[t]he facts as alleged reflect a business decision, which hindsight shows imprudent, that was entered into after normal bargaining.' " Id. (citing Syverson v. FirePond, Inc., 383 F.3d 745, 750 (8th Cir. 2004)).

In this diversity action, the court has jurisdiction pursuant to 28 U.S.C. § 1332. In diversity actions, the court applies the substantive law of the forum state. See Jordan v. NUCOR Corp., 295 F.3d 828, 834 (8th Cir. 2002). "[F]ederal courts sitting in diversity cases, when deciding questions of 'substantive' law, are bound by state court decisions as well as state statutes." Hanna v. Plumer, 380 U.S. 460, 465 (1965) (referencing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)). See also In re Baycol Products Litigation, 616 F.3d 778, 785 (8th Cir. 2010) ("in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state.") (internal citations omitted). In this case, the forum state is South Dakota. Accordingly, the court must apply South Dakota law.

"In South Dakota, a civil pleading based on fraud is sufficiently particular if it alleges 'all of the essential elements of actionable fraud.' " North American Truck & Trailer, Inc. v. M.C.I., 751 N.W.2d 710, 713 (S.D. 2008) (citing Holy Cross Parish v. Heuther, 308 N.W.2d 575, 576 (S.D. 1981) (internal quotation marks omitted). The South Dakota Supreme Court applies the " 'elements test'

11

to determine whether the plaintiff's deceit claim alleged fraud with sufficient particularity." Id. at 714 (internal citation omitted). To do so, the South Dakota Supreme Court examined the elements of the tort claim of deceit:

> A representation made as a statement of fact, which is untrue and intentionally or recklessly made
>
> 1. With intent to deceive for the purpose of inducing the other party to act upon it;
>
> 2. Reliance upon the untrue statement of fact;
>
> 3. Resulting in injury or damage.

Id. See also Stene, 583 N.W.2d at 404 (same); Stabler, 865 N.W.2d at 477 (same).

"Intentional misrepresentation is defined by SDCL 20-10-1 as a wilful deception made with the intention of inducing a person 'to alter his position to his injury or risk.'" Ducheneaux v. Miller, 488 N.W.2d 902, 914-15 (S.D. 1992). "More than a finding of knowledge of falsity is required to warrant a conclusion of liability based on intentional misrepresentation . . . . an action for deceit requires proof that the misrepresentations were material . . . and that the plaintiff relied on the misrepresentations to his detriment." Id. at 915. The South Dakota Supreme Court held that "misrepresentation is essentially a false statement of material fact." Fuller v. Croston, 725 N.W.2d 600, 611 (S.D. 2006) (internal quotation marks omitted). Reliance on the alleged false statement is necessary as proof of liability. Id.

12

Under Fed. R. Civ. P. 8(a)(2), to state a claim for relief the complaint "must contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."   This is required in "order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ."   Twombly, 550 U.S. at 555 (internal quotation marks omitted).   "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."   Id. (internal quotation marks omitted).   "In assessing a motion [to dismiss] . . . a court should . . . not dismiss [a] complaint 'unless it appears beyond doubt that the [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief.' "   Holloway v. Lockhart, 792 F.2d 760, 761 (8th Cir. 1986) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Rule 9(b) requires that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud or mistake."   Fed. R. Civ. P. 9(b).   "Rule 9(b)'s particularity requirement demands a higher degree of notice than that required for other claims, and is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations."   United States ex rel. Joshi v. St. Luke's Hospital, Inc., 441 F.3d 552, 556 (8th Cir. 2006) (internal quotation marks omitted).   "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the

acts occurred, who engaged in them, and what was obtained as a result."
Id.

The amended complaint alleges Mr. Raines' false statements or
misrepresentations induced ILCC to execute the loan agreement.   See Docket
13 ¶¶ 73 & 79.   But then the amended complaint specifically alleges ILCC "in
reasonable reliance on the representations made by Haynes on behalf of
Highland Park and IDC" entered into the loan agreement.   Id. ¶ 79.

On August 31, 2017, IDC defaulted on the payments due under the Loan
Agreement and accompanying promissory note.   Id. ¶ 95.   The amended
complaint alleges Mr. Haynes, on behalf of Highland Park and IDC, negotiated
with ILCC a loan maturity date extension agreement ("Extension Agreement").
Id. ¶ 96.   The Extension Agreement, dated November 30, 2017, set IDC's
payment due date as August 31, 2019, with $1,800,000 due in principal and
interest.   Id.; see also Docket 13-3.

The amended complaint alleges Mr. Raines participated in the Extension
Agreement negotiations, particularly representing to ILCC and its Chief
Executive Officer, Rjay Brunkow, that he, Mr. Raines, "was participating on
behalf of the Oglala Sioux Tribe. . . . and his presence was intended to convince
ILCC" that the original loan funds "were being used for their intended purposes."
Id. ¶¶ 98 & 100.   The amended complaint alleged that "in June, 2014, the Oglala
Sioux Tribe passed a resolution expressly stripping . . . [Mr.] Raines, from any

14

claimed authority to take any economic development action on behalf of the Oglala Sioux Tribe."  Id. ¶ 72.

The amended complaint specifically alleges a timeframe of Mr. Raines' conduct: August 31, 2017 through November 30, 2017.  United States ex rel. Joshi, 441 F.3d at 556.  The amended complaint also identifies the specific misrepresentation relied on by ILCC in executing the Extension Agreement and foregoing immediate litigation and seizure of the collateral, that is, Mr. Raines' claimed the original loan funds were being used for their intended purposes.  Id.

Mr. Raines' argument that ILCC had no right to rely on his statement that the funds were being properly used ignores reality.  To the contrary, if Mr. Raines had suggested to Mr. Brunkow or any other ILCC representative that the funds were not being expended as originally intended, such a statement would have raised a red flag that the project was seriously off-track.  Whether Mr. Raines' allegedly fraudulent statement was an adequate, material statement of deceit upon which ILCC should have relied is a jury question.  Duchenaux, 488 N.W.2d at 915; Fuller, 725 N.W.2d at 611.

The amended complaint sufficiently described the conduct, actions, and facts allegedly used to perpetrate fraud on ILCC.  The factual allegations of the plaintiff's amended complaint satisfy the "heightened pleading standard" required by Rule 9(b).  Twombly, 550 U.S. at 569 n.14.  It presents the court with adequate facts, as required by Rule 8(a)(2), which would allow the court to "draw the reasonable inference that [Mr. Raines] is liable for the misconduct

alleged." <u>Braden</u>, 588 F.3d at 594.   Plaintiff has stated a claim for fraud and intentional misrepresentation by Mr. Raines.

Defendant's motion to dismiss count 4 is denied.

C.     <u>Count 5</u>

The amended complaint alleges a RICO claim in violation of 18 U.S.C. § 1962.   (Docket 13 ¶¶ 145-151).   Mr. Raines asserts the amended complaint fails to allege a RICO claim.   (Docket 16 at p. 10).

"Section 1962 of the RICO Act makes it 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]' " <u>Nitro Distributing, Inc., v. Alticor, Inc.</u>, 565 F.3d 417, 428 (8th Cir. 2009) (quoting 18 U.S.C. § 1962(c)).   "To establish a RICO violation under 18 U.S.C. § 1962(c), the plaintiff must show (1) the existence of an enterprise; (2) conduct by the defendants in association with the enterprise; (3) the defendants' participation in at least two predicate acts of racketeering; and (4) conduct that constitutes a pattern of racketeering activity."   <u>Burke v. Ability Ins. Co.</u>, 926 F. Supp. 2d 1056, 1067 (D.S.D. 2013) (citing <u>In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litigation</u>, 340 F.3d 749, 767 (8th Cir. 2003); internal quotation marks omitted).

"Enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of

16

individuals associated in fact although not a legal entity."   18 U.S.C. § 1961(4).
"[T]he plaintiff must always be able to establish the existence of an enterprise as
it remains a separate element which must be proved."   Burke, 926 F. Supp. 2d
at 1067 (internal citation omitted; quoting United States v. Turkette, 452 U.S.
576, 583 (1981)).

     "A pattern is shown through two or more related acts of racketeering
activity that amount to or pose a threat of continued criminal activity."   Nitro
Distributing, Inc., 565 F.3d at 428 (internal quotation marks and citation
omitted).   "[T]he predicate acts must be related and must amount to or pose a
threat of continued criminal activity."   Wisdom v. First Midwest Bank, of Poplar
Bluff, 167 F.3d 402, 406 (8th Cir. 1999) (internal quotation marks and citation
omitted).   "The relationship prong of the pattern element is satisfied if the
predicate acts have the same or similar purposes, results, participants, victims,
or methods of commission, or otherwise are interrelated by distinguishing
characteristics and are not isolated events."   Id. (internal quotation marks and
citations omitted).   "The second prong, continuity, can be either closed-ended or
open-ended."   Id.   "Closed-ended continuity involves a series of related
predicates extending over a substantial period of time; open-ended continuity
involves acts which, by their nature, threaten repetition into the future."   Id.
(internal quotation marks and citation omitted).   "Multiple predicates within a
single scheme are encompassed within the RICO statute as long as the
relationship and continuity elements are met."   Id.   "Section 1964(c) allows a

private party, who has been injured . . . from a RICO violation, to sue for damages." Id.

1.      Galanis Bond Scheme[1]

Addressing the John Galanis bond scheme allegations,[2] Mr. Raines contends the amended complaint "conveniently omits . . . that Galanis was prosecuted for this scheme and convicted."   (Docket 16 at p. 4).   Mr. Raines submits "[n]either [he] nor WLCC participated in this scheme with Galanis. Rather, WLCC was a victim of the scheme" and Mr. Raines "testified against Galanis in the criminal case."[3]  Id. at p. 5.   Mr. Raines argues "[t]he Galanis bond scheme has nothing to do with the facts alleged in the Amended Complaint, and the allegations are an inappropriate attempt to manufacture a non-existent connection between Galanis's criminal activity and Raines."   Id. (italics omitted).

In response, ILCC asserts Mr. Raines and Mr. Haynes "were . . . involved in the 2014 Galanis bond scheme, after which their relationship continued through their use of WLCC, the formation of IDC, and their continued pursuit of

---

[1]While the Galanis bond scheme appears in the general background of the amended complaint, plaintiff's briefing makes clear these allegations are tied to count 5, the RICO claim.   See Docket 19 at pp. 13-15 & 20.

[2]See Docket 13 ¶¶ 20-33.

[3]See United States v. John Galanis, 1:16-cr-00371 (S.D. N.Y. 2016). Following Mr. Galanis' conviction, the United States Court of Appeals for the Second Circuit directed the district court to reduce restitution to the Walpamni Lake Community Corporation and other victims to $43,427,436.   Id., Docket 967 at p. 6; see also Dockets 22 at p. 1 & 22-1 at p. 6.   The court takes judicial notice of this case pursuant to Fed. R. Evid. 201(b)(2) & (c)(1).

18

fraudulent bond schemes from 2015 to 2020." (Docket 19 at p. 14). Plaintiff's brief neither acknowledges Mr. Galanis' conviction nor responds to the other statements made by Mr. Raines regarding that incident.

In his reply, defendant provides more detail of Mr. Galanis' conviction and the criminal court's statements that Mr. Raines testified against the bond scheme and that WLCC was a victim of Mr. Galanis' bond scheme. (Docket 21 at pp. 3-4). "Based on these undisputed and publicly available facts, Raines was a victim of the Galanis Bond Scheme, not a perpetrator of it, and" for this reason Mr. Raines argues the Galanis Bond "scheme cannot plausibly support Plaintiff's RICO claim against Raines." Id. at p. 4.

"In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is 'not precluded in [its] review of the complaint from taking notice of items in the public record.'" Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007) (citing Papasan v. Allain, 478 U.S. 265, 269 n.1 (1986); referencing Stahl v. United States Department of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss"). "Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in . . . opposition to the motion. . . . Some materials that are part of the public record . . . may be considered by a court in deciding a Rule 12(b)(6) motion." Id. (citing Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999)).

19

The court finds the allegations about the Galanis bond scheme in the amended complaint are in conflict with the undisputable public record in <u>United States v. Galanis</u>.   The amended complaint's allegations, based on "information and belief" that Mr. Raines was a participant in Mr. Galanis' scheme cannot circumvent the public record to the contrary.   (Docket 13 ¶¶ 20-22, 27 & 29-33). The Galanis bond scheme allegations will not be considered in analyzing plaintiff's RICO claim in count 5.

2.      Associated in Fact Enterprise

Mr. Raines argues the amended complaint alleges he and Mr. Haynes were in an " 'associated in fact' enterprise."   (Docket 16 at p. 12).   Mr. Raines submits "the Amended Complaint defines the relationship between [them] solely by the alleged racketeering activity in which they allegedly engaged."   <u>Id.</u> at p. 13.   That is, they created IDC with the purpose to "obtain financing for a project they purportedly never meant to complete."   <u>Id.</u>   "Even accepting those facts as true," Mr. Raines contends "the Amended Complaint alleges nothing more than a conspiracy among [them] to commit mail and wire fraud, which does not qualify as an enterprise as a matter of law."   <u>Id.</u> (referencing <u>Chang v. Chen</u>, 80 F.3d 1293, 1300 (9th Cir. 1996)).   Mr. Raines argues the amended complaint fails to allege or identify a "continuing unit."   <u>Id.</u> at p. 14 (referencing <u>Cedar Swamp Holdings, Inc. v. Zaman</u>, 487 F. Supp. 2d 444, 451 (S.D.N.Y. 2007)).

To satisfy the pleading requirements of Rule 9(b), Mr. Raines submits the amended complaint was required to allege "(1) the identity of the alleged victims

in the other fraudulent bond scheme; (2) when, specifically, the other alleged acts of racketeering were committed; [and] (3) which Defendant(s) committed the alleged acts of racketeering."   Id. (referencing Menasco, Inc., v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989)).   Mr. Raines argues "no enterprise would exist absent the alleged predicate acts of mail and wire fraud because there is no distinct structure.   Instead, there are two individual defendants who are alleged to have committed mail or wire fraud."   Id. at p. 15.

In response, ILCC argues the amended complaint alleges "an association-in-fact 'enterprise' [was] formed to obtain bond proceeds through fraudulent means."   (Docket 19 at p. 12) (referencing Docket 13 ¶ 52).   According to ILCC, the Supreme Court held "the RICO statute does not specifically define the outer boundaries of the 'enterprise' concept but provides that the term 'includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.' "   Id. at p. 13 (citing Boyle v. United States, 556 U.S. 938, 944 (2009); quoting 18 U.S.C. § 1961(4)).   ILCC contends "for purposes of a civil RICO pleading, an enterprise could even simply be 'a group of persons associated together for a common purpose of engaging in a course of conduct.' "   Id. (citing Turkette, 452 U.S. at 583).

Addressing "common purpose," the first of three features of an association-in-fact enterprise, ILCC argues Mr. Haynes and Mr. Raines "formed the shell company of IDC . . . for the purpose of . . . obtaining loans and bond

21

proceeds through fraudulent means to misappropriate for their own personal use. . . . [C]learly . . . a 'common purpose.' " <u>Id.</u> at p. 14 (referencing <u>Boyle</u>, 556 U.S. at 946).   Concerning the "second structural element," ILCC argues the two men were in a criminal partnership involving "their use of WLCC, the formation of IDC, and their continued pursuit of fraudulent bond schemes from 2015 to 2020," which satisfies the "relationship among those associated with the enterprise" factor.   <u>Id.</u> at pp. 14-15 (referencing <u>Boyle</u>, 556 U.S. at 946). Focusing on the third factor, "longevity sufficient to permit those associates to pursue the enterprise's purpose," ILCC submits the amended complaint alleges Mr. Haynes' and Mr. Raines' relationship was of sufficient duration dating back to the formation of IDC in 2015.   <u>Id.</u> at p. 15 (referencing <u>Boyle</u>, 556 U.S. at 946 & Docket 13 ¶¶ 20-34).

ILCC asserts the amended complaint alleges "the existence of the enterprise and that its participants engaged in a pattern of racketeering activity while advancing a shared, common purpose."   <u>Id.</u> at p. 16 (referencing <u>Boyle</u>, 556 U.S. at 947 n.4).   Further, ILCC argues its amended complaint satisfies both RICO and Rule 9(b) because " 'proof of a pattern of racketeering activity [is] sufficient' to permit a Court 'to infer the existence of an association-in-fact enterprise.' "   <u>Id.</u> at p. 17 (referencing <u>Boyle</u>, 556 U.S. at 947-51).

In reply, Mr. Raines argues that the amended complaint "allegations . . . amount to nothing more than a purported conspiracy among Defendants to commit mail and wire fraud, which does not qualify as a conspiracy as a matter

22

of law."   (Docket 21 at p. 7) (referencing <u>Chang</u>, 80 F.3d at 1300) ("A conspiracy . . . is not an enterprise for the purposes of RICO.").

The court finds the allegations of the amended complaint sufficiently allege Mr. Haynes and Mr. Raines formed IDC, the enterprise through which to engage in the alleged criminal conduct, that is, mail fraud and wire fraud.   It was through IDC that the amended complaint alleges the loan funds and any bond proceeds were deposited and subsequently improperly used by the defendants.

3.   Pattern of Racketeering

Mr. Raines argues the amended complaint fails to allege a pattern of racketeering.   (Docket 16 at p. 15).   He asserts the amended complaint alleges the pattern of racketeering to include "repeated acts of wire fraud to obtain access to loan proceeds advanced by ILCC under the Loan Agreement and additional extensions thereto" and "were conducted through means of interstate commerce, including interstate wire communications."   <u>Id.</u> at pp. 15-16 (citing Docket 13 ¶¶ 147 & 148).   Mr. Raines contends "[t]hese allegations are insufficient to establish a pattern of racketeering activity."   <u>Id.</u> at p. 16 (referencing <u>Crest Construction II, Inc. v. Doe</u>, 660 F.3d 346, 356 (8th Cir. 2011). Addressing a claim of the amended complaint to "plead open ended continuity," Mr. Raines argues "there are no facts to suggest there is [a] distinct threat of long-term racketeering activity where the sole activity . . . is unrelated to any other predicate acts or pattern of activity that could qualify under RICO."   <u>Id.</u> (emphasis omitted).

23

In response, ILCC argues the amended complaint's allegations "serve as proof of both the existence of the enterprise and that its participants engaged in a pattern of racketeering activity while advancing a shared, common purpose." (Docket 19 at p. 16) (referencing Boyle, 556 U.S. at 947 n.4).

The amended complaint "presumes rather than details any use of the U.S. mails or electronic wire carrier in perpetrating the alleged scheme." Crest Construction II, Inc., 660 F.3d at 357.   The amended complaint alleges "a pattern of racketeering activity, including repeated acts of wire fraud . . . conducted through means of interstate commerce, including interstate wire communications . . . [and defendants] conspired to support the enterprise . . . though repeated acts of wire and mail fraud."   (Docket 13 ¶¶ 147-148 & 150).

"When facing a motion to dismiss, threadbare recitations of the elements of a RICO claim, 'supported by mere conclusory statements, do not suffice.' " Crest Construction II, Inc., 660 F.3d at 357 (citing Iqbal, 556 U.S. at 678).   "[T]o state a RICO claim based on wire and mail fraud, plaintiff[] under Rule 9(b) must allege the who, what, when, where, and how of wire and mail fraud."   GSAA Home Equity Tr. 2006-2 ex rel. LL Funds LLC v. Wells Fargo Bank, N.A., 133 F. Supp. 3d 1203, 1225 (D.S.D. 2015) (referencing Crest Construction II, Inc., 660 F.3d at 358).

The amended complaint fails to articulate even one instance of the "who, what, when, where, and how" defendants committed mail fraud or wire fraud. Id.   The amended complaint simply attempts to support the RICO claim by

conclusory statements, without alleging any details.   Count 5 "fail[s] to allege a scheme that is legally sufficient to constitute a pattern of racketeering."   <u>Crest Construction II, Inc.</u>, 660 F.3d at 358.   The amended complaint fails to state a valid RICO claim.   Mr. Raines's motion to dismiss count 5 is granted.

**ORDER**

Based on the above analysis, it is

ORDERED that defendant Raines' motion to dismiss (Docket 15) is granted in part and denied in part consistent with this order.

IT IS FURTHER ORDERD that defendant's motion to dismiss count 4 of the amended complaint as it relates to Mr. Raines is denied.

IT IS FURTHER ORDERED that defendant's motion to dismiss count 5 of the amended complaint as it relates to Mr. Raines is granted.

Dated December 3, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE