UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| INDIAN LAND CAPITAL COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>HIGHLAND PARK MANAGEMENT, LLC, L. STEVEN HAYNES, and RAYCEN RAINES,<br><br>Defendants. | 5:21-CV-05015-KES<br><br>ORDER DENYING HPM AND HAYNES'S MOTION FOR SUMMARY JUDGMENT AND GRANTING RAINES'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Indian Land Capital Company (ILCC), sued defendants, Highland Park Management (HPM), LLC, L. Steven Haynes, and Raycen Raines, alleging that defendants made fraudulent misrepresentations during loan and loan-extension negotiations that were relied upon by ILCC when it made a $1.5 million loan to defendants. Docket 13 at 15-19.[1] Pending before the court are defendants HPM and Haynes's and defendant Raines's separate motions for summary judgment.[2] Docket 58; Docket 62. ILCC does not dispute Raines's statement of material facts, Docket 60, and consequently did not file a responding statement, Docket 74. Thus, those facts are deemed admitted. *See*

---

[1] A default judgment was entered in favor of ILCC and against Infrastructure Development Cooperative, a former party in this case, on December 3, 2021. Docket 31.

[2] ILCC does not allege that HPM engaged in fraud other than statements that ILCC attributes to Haynes. Thus, Haynes and HPM will collectively be referred to as "Haynes" in this order.

D.S.D. Civ. LR 56.1(D). Where some dispute exists about Haynes's material facts, the court views the evidence in the light most favorable to the non-moving party, ILCC. *Oglesby v. Lesan*, 929 F.3d 526, 531-32 (8th Cir. 2019).

## FACTUAL BACKGROUND

The Infrastructure Development Cooperative (IDC) was formed to provide propane to various Native American tribes. Docket 60 ¶ 5. In March 2015, IDC entered into a management agreement with HPM, which was owned by Steven Haynes. Docket 70 ¶ 4. Gabe Doney was hired as IDC's Executive Director. *Id.* ¶ 3. The Wakpamni Lake Community Propane Company, a subsidiary of the Wakpamni Lake Community Corporation (WLCC), joined IDC on December 29, 2014. *Id.* ¶¶ 1-2. Raines was the Chief Executive Officer of WLCC. Docket 65-46 at 2.

IDC intended to finance the propane venture by issuing revenue bonds. Docket 60 ¶ 5; Docket 70 ¶ 5. But before the new bonds were issued, WLCC funded IDC's business venture from a previous bond issue. Docket 70 ¶ 6. Due to a late bond payment during the fall of 2015, IDC sought a bridge loan to finance the propane project until IDC could obtain bond financing. *Id.* ¶¶ 7-8. Haynes contacted Rjay Brunkow, ILCC's CEO and sole employee during the relevant period, and asked whether ILCC was interested in providing a loan guaranty.[3] *Id.* ¶¶ 9-10. After reviewing the proposal for a guaranty, Brunkow

---

[3] ILCC is a for-profit subsidiary of the Indian Land Tenure Foundation, a Minnesota non-profit corporation, that provides alternative loan options to Native Nations for tribal land acquisition and economic development projects. Docket 60 ¶ 3; Docket 61-1 at 6.

informed Haynes that ILCC would prefer to make the loan directly to IDC rather than guarantee a different lender's loan. *Id.* ¶ 11.

Haynes, amenable to this arrangement, sent Brunkow several documents for ILCC to evaluate and underwrite the loan. *Id.* ¶¶ 12, 14-15. One such document was the "sources and uses" document, which describes three specific uses for the loan proceeds: (1) propane purchases, (2) a $500,000 reserve account, and (3) storage tanks and delivery vehicle purchases. *Id.* ¶¶ 18-19, at 13. Haynes emailed Doney and asked him to provide Brunkow with all letters of intent, resolutions, and contracts affiliated with the project. *Id.* ¶ 12. Brunkow was copied on that email. *Id.* ¶ 14. IDC sent Brunkow copies of its agreements with members, customer tribes, and vendors.[4] *Id.* ¶ 15. Haynes then prepared and submitted a short description of the project at ILCC's request. *Id.* ¶¶ 16-17. Haynes also allegedly informed Brunkow that the proposed revenue bonds were fully subscribed and would be sold upon issuance of the bonds after the Moody's rating was announced. *Id.* ¶ 47. During this due diligence process, ILCC specifically advised that it would not do business with Raines or lend money to IDC if Raines was involved in the

---

[4] The parties disagree as to the extent of the documents that were sent from IDC to ILCC. Haynes contends that "all of its agreements with members, customer tribes, and vendors" were sent to ILCC. Docket 70 ¶ 15. On the other hand, ILCC states that it was only provided the letters of intent that IDC had to date, the resolutions, and the CHS contract. *Id.* ILCC states that IDC also sent certain information and data ostensibly collected by IDC. *Id.*

3

matter. Docket 60 ¶¶ 7-8. As such, Raines was not involved during the loan underwriting process in any capacity.[5] *Id.* ¶ 9.

On February 2, 2016, ILCC and IDC executed a loan agreement and promissory note. Docket 70 ¶ 23. The agreement stated that the note would be paid in full on August 31, 2017, with the proceeds from the anticipated bond issue. *Id.* ¶¶ 24-25. As part of the agreement, ILCC placed liens on several trucks and trailers owned by HPM and IDC. *Id.* ¶¶ 48-51. ILCC was informed that the collateral was valued at approximately $400,000. Docket 71-3 at 3; Docket 71-4. The day after the net loan proceeds were deposited into an IDC bank account controlled by Haynes, Haynes immediately began spending the proceeds on HPM "management fees," and not on propane purchases or new equipment as indicated during negotiations and in the parties' loan agreement.[6] Docket 70 ¶¶ 33-43, at 14-16. In May 2016, after Moody's rated IDC's proposed bonds as a significantly risky investment, Brunkow believed IDC would be unable to market the bonds, and that a different form of repayment for the bridge loan was necessary. *Id.* ¶¶ 26-28. IDC subsequently withdrew its bond request. *Id.* ¶ 30.

---

[5] ILCC—through Brunkow—also stated that "there was nothing that Mr. Raines did or did not do that was material to the ILCC's decision to extend a loan to the IDC in 2016." Docket 60 ¶ 12. Brunkow further stated that ILCC did not "rely in any way on anything that Raycen Raines had said to [the ILCC] in terms of granting either extension." *Id.* ¶ 18

[6] ILCC states these facts in addition to its response to Haynes's statement of undisputed material facts. *See* Docket 70 at 11-17.

4

In November 2016, ILCC requested a summary of IDC's plan to obtain new financing. *Id.* ¶ 33. Haynes informed Brunkow that IDC was seeking support from other funding sources, though Brunkow understood that such financing was not guaranteed.[7] *Id.* ¶¶ 34-35, 38. When the loan came due on August 31, 2017, Haynes informed Brunkow that he was still trying to obtain financing. *Id.* ¶¶ 36-37. Because the collateral was inadequate to make ILCC whole and there was no other way to pay the loan, the parties eventually extended the loan maturity date until August 2019. *Id.* ¶¶ 39-40. In September 2019, the parties again extended the loan maturity date, this time until June 2020. *Id.* ¶¶ 41-42; Docket 60 ¶ 16. ILCC made clear that it did not rely on anything Raines said or did in determining whether to grant either extension. Docket 60 ¶ 18. IDC ultimately failed to pay the amount due on the loan.

In March 2021, ILCC filed this lawsuit against IDC and the named defendants, Docket 1, and filed an amended complaint in May 2021, Docket 13. The amended complaint alleges (1) breach of contract, (2) claim and delivery, (3) conversion, (4) fraud, and (5) a RICO violation. *Id.* Counts 1-3 were resolved after a default judgment was entered in favor of ILCC and against IDC. Docket 31. The RICO claim was dismissed as to Raines by the court.[8] Docket

---

[7] The parties agree that Brunkow knew that other potential funding sources such as Hunting Dog Capital and Sentinel Capital were not guaranteed. Docket 70 ¶¶ 34-35, 38.

[8] The court dismissed the RICO claim against Raines. Docket 32 at 25. ILCC now states that it is not pursuing the RICO claim against Haynes or HPM. Docket 69 at 9 n.2.

5

32. ILCC's sole remaining claim against Raines, Haynes, and HPM is the fraud claim. Defendants HPM and Haynes and defendant Raines have now filed separate motions for summary judgment. Docket 58; Docket 62. ILCC opposes HPM and Haynes's motion and does not oppose Raines's motion. Docket 69; Docket 74. The court will address each motion below.

## DISCUSSION

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *Morrow v. United States*, 47 F.4th 700, 704 (8th Cir. 2022) (alteration in original) (quoting *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995)). In ruling on a motion for summary judgment the "court must make all reasonable inferences in favor of the non-moving party[] but will not resort to speculation." *Hill v. Sw. Energy Co.*, 858 F.3d 481, 487 (8th Cir. 2017) (citation and internal quotation marks omitted). To avoid summary judgment, a non-moving party may not simply rest on the allegations in its pleadings, but instead must set forth specific facts, either by affidavit or other evidence, showing that a genuine issue of material fact exists. *Id.*

I.  **Defendants HPM and Haynes's Motion for Summary Judgment**

To succeed on a fraud claim under South Dakota law, ILCC must prove: (1) the representation at issue was "made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made[,]" (2) the representation was made with "intent to deceive and for the purpose of inducing the other party to act upon it[,]" and (3) "the person to whom the representation was made must show that he did in fact rely on it and was induced thereby to act to his injury or damage." *Aqreva, LLC v. Eide Bailly, LLP*, 950 N.W.2d 774, 791 (S.D. 2020) (citation omitted).

Haynes argues that ILCC has failed to provide sufficient evidence to support its fraud claim. Docket 63 at 11. In response, ILCC argues that the following evidence shows that Haynes used misrepresentations "to induce ILCC into funding the [l]oan [to IDC]": (1) Haynes made false representations about the intended use of the loan proceeds; (2) Haynes falsely stated the bonds were fully subscribed; (3) Haynes falsely represented IDC's membership; (4) Haynes falsely stated IDC would be well-run with reliable equipment; and (5) Haynes inflated the value of the collateral. Docket 69 at 9-16. ILCC contends that Haynes knew each statement was false when made and that ILCC relied upon those statements in determining whether to fund IDC's loan. *Id.* ILCC also asserts that Haynes ultimately diverted the loan funds "to his own uses instead of the propane project for which th[e funds] were supposedly intended." *Id.* at 9. Haynes asserts that even if he made the allegedly fraudulent statements, each statement, one way or another, fails as a matter of law. *See* Docket 63 at

7

11-23. The court need only address some of the alleged fraudulent statements because denial of summary judgment on one statement would result in denial of summary judgment on the fraudulent misrepresentation claim.[9]

### A. Haynes made false representations about the intended use of the loan proceeds

Haynes provided ILCC with a sources and uses document in contemplation of the loan. Docket 65-3. That document identifies certain intended uses of the loan proceeds, such as: (1) loan fees to ILCC; (2) a line of credit for the purchase of propane; (3) a reserve account; and (4) the purchase of storage tanks and delivery vehicles. *Id.* Haynes contends the statements in the sources and uses document cannot support a fraud claim because: (1) "representations as to future events are not actionable" under fraud and "all the statements in [the sources and uses document] are predictions[,]" Docket 63 at 15; (2) the sources and uses document is premised on a $2 million loan that ILCC never made to IDC, Docket 76 at 2; and (3) nothing in the sources and uses document "promises, represents, or restricts, the use of the loan proceeds from being used to cover the general operating expenses of IDC[,]" *id.*

Haynes is correct that, in general, South Dakota law does not allow recovery for fraudulent misrepresentations when such representations concern future events. *Bayer v. PAL Newcomb Partners*, 643 N.W.2d 409, 413 (S.D.

---

[9] Federal Rule of Civil Procedure 56(a) authorizes a party to move for judgment on a claim or part of a claim. Here, Haynes moves "for summary judgment on all claims." Docket 62 at 1. The court, therefore, will only consider the issue of whether the fraudulent misrepresentation claim as a whole survives summary judgment and not whether parts of that claim survive.

2002). But an exception states that "[a] promise relating to a future event may constitute actionable fraud when made without intention of performance." *Reitz v. Ampro Royalty Trust*, 61 N.W.2d 201, 203 (S.D. 1953); *see also Cohen v. Nw. Growth Corp.*, 385 F. Supp. 2d 935, 957 (D.S.D. 2005) (explaining the exception). As the court in *Cohen* noted, the exception is codified at SDCL § 20-10-2(4), which defines deceit as "[a] promise made without any intention of performing." *Cohen*, 385 F. Supp. 2d at 957 (quoting SDCL § 20-10-2(4)).

  The court finds that the statements made in the sources and uses document pertain to future events because they identify the intended uses of the loan proceeds if such loan was approved. But those statements fall under the ambit of SDCL § 20-10-2(4) because ILCC has submitted evidence—an expert report—stating that Haynes made "questionable transactions" with the loan proceeds without any intention of performing. Docket 73-1 at 19-20 (detailing the "questionable transactions"); *see also* Docket 69 at 11-12 (describing how the statements made in the sources and uses document were made without any intention of performing). Because Haynes made questionable transactions immediately after receiving the loan proceeds, there is evidence that he never intended to perform as he represented in the sources and uses document. That evidence, coupled with the fact that the future events prescribed by the sources and uses document were within Haynes's control, could allow a jury to reasonably infer that Haynes knew the statements were untrue, or recklessly made, that Haynes made them without any intention to

9

perform, and that Haynes made the statements to induce ILCC into funding the loan.

Further, Haynes's argument—that the sources and uses document is irrelevant because it was premised on a $2 million loan that ILCC never made to IDC instead of the $1.5 million loan that was made—is unavailing. Haynes fails to cite any caselaw supporting this assertion, and it is logical to infer that ILCC ultimately decided to only partially grant IDC's $2 million loan request without expanding the list of valid uses of the loan proceeds.

Haynes also contends that the sources and uses document was not a comprehensive list of valid uses of the loan proceeds. *See* Docket 63 at 16; Docket 76 at 2. Indeed, the sources and uses document may not be a comprehensive enumeration of Haynes's intentions for the loan proceeds, but that is not the relevant inquiry. Instead, the question is whether there is evidence that the sources and uses document was a statement of fact that ILCC relied upon in determining whether to provide a substantial loan to IDC. The evidence shows that at the time Haynes provided ILCC the sources and uses document, it represented IDC's potential uses of the loan proceeds. A jury could reasonably infer that Haynes sent the document to represent how IDC intended to spend the loan proceeds. Haynes's claim that it was "a discussion document . . . some ideas[,]" is irrelevant. Docket 76 at 1. Of course, ILCC must also establish that it reasonably relied upon the sources and uses document. Whether a party relied upon a misrepresentation is a question of fact for the jury to decide. *Poeppel v. Lester*, 827 N.W.2d 580, 587 (S.D. 2013).

In addition, ILCC has proffered evidence of Haynes's deceitful intent. *See Est. of Johnson ex rel. Johnson v. Weber*, 898 N.W.2d 718, 729 (S.D. 2017) ("In fraud and deceit claims, summary judgment is proper when a plaintiff produces no evidence of deceitful intent on defendant's part.") (citation omitted). That Haynes immediately began funneling large sums of the loan proceeds from IDC to HPM for "management fees" and "expenses" before any substantial work was performed is evidence of Haynes's intent to deceive ILCC into funding the loan. *See* Docket 69 at 11-12.

The statements made by Haynes in the sources and uses document are actionable under fraud, and there is a genuine issue concerning whether ILCC relied on such statements.

### B. Haynes falsely represented IDC's membership

ILCC alleges that, during the loan negotiation process, Haynes fraudulently represented the number of tribes already involved, or potentially involved, in IDC's propane business venture. *Id.* at 14. In particular, ILCC alleges Haynes stated:

1. "Four tribes have adopted laws and joined [IDC]";
2. That IDC would "add four to seven new members within a month"; and
3. That IDC has "16 tribes signed and ready to go."

*Id.* ILCC has provided evidence that, in fact, there were only two formal members of IDC and that IDC had only one official customer. *Id.* ILCC contends that it was false for Haynes to represent that four tribes were involved in IDC's business venture and that the "reasonable inference for making such inflated statements about the customer base . . . was to induce ILCC to fund

11

the [l]oan." *Id.* In contrast, Haynes denies saying that IDC had "16 tribes signed and ready to go[,]" Docket 63 at 19, and also argues that it was unreasonable for ILCC to rely on any of the alleged statements because IDC provided written copies of all the member agreements that it had with tribes, *id.* at 19-20; Docket 76 at 6.

The question of whether Haynes actually made the statement—that IDC has "16 tribes signed and ready to go"—is a genuine issue of material fact for the jury to determine. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). It is up to the jury, and not this court, to determine whether Haynes made such a statement. In addition, there is sufficient evidence in the record indicating that Haynes may have known that all three statements at issue were untrue when made and that Haynes made them with the intent to induce ILCC to provide the loan. *See* Docket 69 at 14-15 (citing deposition testimony providing details of IDC's actual membership numbers at the time Haynes made the representations). And, as stated above, reliance in a fraudulent inducement case like this one is a question of fact for the jury to determine. *See Poeppel*, 827 N.W.2d at 587.

### C. Haynes inflated the value of the collateral

ILCC alleges that Haynes fraudulently inflated the value of the vehicles that were used as collateral for the loan. Docket 69 at 15-16. During loan negotiations, Haynes provided ILCC with a spreadsheet containing brief vehicle

12

descriptions, VIN numbers, and the value ($68,000) of each vehicle. Docket 71-4. Haynes admitted during discovery that the values as reflected in the spreadsheet were for the vehicles in "refurbished condition[,]" and that, at the time ILCC received the spreadsheet, the vehicles were not refurbished. Docket 69 at 16. Haynes asserts that IDC prepaid for the collateral's refurbishment and that the vehicles were in the process of being refurbished when Haynes represented the value of the collateral to ILCC. *Id.*; Docket 76 at 8. But ILCC states that neither Doney nor Haynes knew the location of any of the collateral, raising the inference that the collateral may not have been more than mere paper titles. Docket 69 at 16 (citing deposition testimony).

A genuine issue of material fact exists as to whether Haynes fraudulently represented the value of collateral. *Torgerson*, 643 F.3d at 1042 (If a nonmovant "come[s] forward with specific facts" that could "lead a rational trier of fact to find for the nonmoving party, there is [a] genuine issue for trial."). ILCC has provided evidence that Haynes knew the collateral was worth less than represented at the time he provided the collateral value to ILCC. Docket 69 at 15-16. Similarly, ILCC has submitted evidence of Haynes's deceitful intent. *See id.* at 11-12. It is therefore reasonable to infer that Haynes misrepresented the value of the collateral to induce ILCC to fund the loan. Indeed, Haynes may be telling the truth about the refurbished condition of the collateral. But, as stated above, credibility determinations and drawing legitimate inferences are questions for the jury. *See Torgerson*, 643 F.3d at 1042. The same goes for Haynes's argument that $68,000 was a reasonable

price for each vehicle because IDC sold one of the vehicles for that amount in 2017 to partially pay down the loan. Docket 76 at 8. Whether $68,000 was a reasonable price, and not a false representation, is for the jury to decide.

Because genuine issues of material fact exist as to whether Haynes made false representations about the intended use of loan proceeds, falsely represented IDC's membership, and inflated the value of the collateral, summary judgement is denied on the fraudulent misrepresentation claim.

## II. Raines's Motion for Summary Judgment

Raines moves for summary judgment on ILCC's fraud claim and argues that the evidence shows Raines had no impact on ILCC's lending decisions. Docket 68 at 1. ILCC does not oppose Raines's motion. Docket 74. While the lack of opposition is notable, the court "must still determine that the moving party is entitled to judgment as a matter of law on [the] claim." *Calon v. Bank of Am., N.A.*, 915 F.3d 528, 530 (8th Cir. 2019) (internal quotation marks omitted); *Mack v. Dillon*, 594 F.3d 620, 622-623 (8th Cir. 2010) (stating that a nonmoving party's failure to respond does not necessarily result in granting a summary judgment motion). The movant still must satisfy its initial burden of establishing that there are no genuine issues of material fact and must identify those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). But without guidance from the nonmovant, the court has no duty to "mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments." *Rodgers v. City of Des Moines*, 435 F.3d 904, 908

(8th Cir. 2006). Instead, where, as here, there is a failure to respond, the court may treat the movant's assertions of fact as undisputed for purposes of the motion. Fed. R. Civ. P. 56(e); D.S.D. Civ. LR 56.1(D). Thus, the court treats Raines's assertions of fact, where supported by evidence, as undisputed, and next looks to whether those undisputed facts entitle Raines to judgment as a matter of law.

In the amended complaint, ILCC alleges Raines made false statements during the loan extension negotiations that induced ILCC to ultimately extend the loan. *See* Docket 13 ¶¶ 98-102, 108-113. Raines, in moving for summary judgment, argues that he never made an intentionally false statement and, even if he did, ILCC is unable to demonstrate that it detrimentally relied on such a statement. Docket 68 at 5-6. The court agrees.

As mentioned before, South Dakota law requires a plaintiff alleging fraud to prove that: (1) the representation at issue was "made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made[,]" (2) the representation was made with "intent to deceive and for the purpose of inducing the other party to act upon it[,]" and (3) "the person to whom the representation was made must show that he did in fact rely on it and was induced thereby to act to his injury or damage." *Aqreva*, 950 N.W.2d at 791. The undisputed facts reveal that ILCC specifically advised IDC that it would not do business with Raines or lend money to IDC if Raines was involved with the business in any capacity. Docket 60 ¶¶ 7-8. The evidence further shows that ILCC did not "rely in any way on anything that Raycen Raines had

15

said to [ILCC] in terms of granting either [loan] extension." *Id.* ¶ 18. Because there is no dispute of material fact as to whether Raines made a false statement or, even if he had, whether ILCC relied on such statement, the court grants Raines's summary judgment motion on ILCC's fraud claim.

## CONCLUSION

For these reasons, it is ORDERED that

1) Defendants HPM and Haynes's motion for summary judgment (Docket 62) is DENIED; and

2) Defendant Raines's motion for summary judgment (Docket 58) is GRANTED.

Dated February 11, 2025.

                                                                BY THE COURT:

                                                                */s/ Karen E. Schreier*
                                                                KAREN E. SCHREIER
                                                                UNITED STATES DISTRICT JUDGE